[No. 15633.    Department One.—January 7, 1898.]

J. W. SAYWARD, Administrator, etc., Appellant, v. J. F. HOUGHTON et al., Respondents.

STOCK OF CORPORATION—ENFORCEMENT OF TRUST BY ADMINISTRATOR OF BENEFICIARY.—Where shares of the stock of a corporation had been pledged by the original owner as security for payment of his note, and had been sold to satisfy the note, and the purchaser was willing and desirous to allow the original owner the benefit of a great rise in the value of the stock, upon payment of a specified sum therefor, and such sum was advanced by the defendant under an agreement that the original owner of the stock should procure it to be transferred to the defendant to be held by him for the benefit of the original owner, upon the trust and condition that such original owner, upon the tender by him to the defendant within six months of the sum so advanced with interest from the date of advance, and a specified bonus, should receive from the defendant a transfer of all of said stock, and such original owner died before the expiration of the time limited, an action will lie in favor of his administrator, after tender to the defendant of the amount so agreed upon, to enforce the trust, and to compel a retransfer of the stock by the defendant pursuant to the agreement.

CXIX. CAL.—35

ID.—SPECIFIC PERFORMANCE OF CONTRACT—OPTION—MUTUALITY—EFFECT OF TENDER.—Assuming that the element of mutuality was wanting in the contract sought to be enforced at the time the contract was entered into, and that it only conferred upon the original owner of the stock an option to pay the money, that element was supplied upon the offer of performance and tender of the amount agreed upon by his administrator, at which time the remedy became mutual. An original lack of mutuality in the right to specific performance of a contract will not preclude the enforcement of the contract where this want has been removed at the time the action was brought.

ID.—CREATION OF TRUST—CONSIDERATION—STATUTE OF FRAUDS.—The transaction between the defendant and the original owner of the stock was not in effect a purchase of the stock by the defendant from the prior purchaser with a mere promise without consideration to hold it for the benefit of the original owner; but in legal effect it amounted to a purchase of the stock by the original owner with money advanced by the defendant, the title to the stock being taken in the name of the latter as security for the repayment of the money so advanced, with the stipulated compensation for its use, and there was no want of consideration for the promise to return or transfer the stock, nor was there anything in the nature of the contract rendering it obnoxious to the statute of frauds; but a trust arose upon the facts in favor of plaintiff's intestate to have the stock restored to him upon compliance with the terms of the contract.

ID.—RIGHT OF ADMINISTRATOR TO SUE—OFFER OF PAYMENT.—The administrator of the deceased beneficiary of the trust may maintain an action to enforce the trust, upon compliance with the contract creating it on his part, and an offer or tender of payment by such administrator to the defendant of the sum agreed upon, within the time limited by the contract, is sufficient to authorize the maintenance of such action.

ID.—CONSTRUCTION OF CODE—MODE OF TENDER.—Section 1500 of the Civil Code does not prescribe the mode of tender, but a method of extinguishing an obligation when that object is sought.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. C. B. Hebbard, Judge.

The facts are stated in the opinion of the court.

R. E. Houghton, for Appellant.

Fox & Kellogg, for Respondents.

VAN FLEET, J.—The court below sustained a demurrer interposed by defendant Houghton to the complaint, and entered judgment dismissing the action, from which plaintiff appeals. The only question involved in the appeal is whether the complaint states a cause of action.

The averments of the complaint, so far as material here, are in substance that W. T. Sayward, plaintiff's intestate, being the owner of three thousand shares of the capital stock of the corporation defendant, the Riverside Land and Irrigation Company, transferred the same to one Felton, as security for the payment of a certain promissory note, with power of sale in Felton on default of the payment of the note; that the note not being paid, the stock was thereafter, on March 16, 1887, duly sold by Felton to one George Loomis for forty-six thousand dollars, to satisfy the note; that subsequent to said pledge, and prior to the sale, said stock had greatly increased in value, and at the date of the sale, and thereafter, and at the time of bringing this action, was of far greater value than the amount for which it was sold, to wit, of the value of one hundred and seventy-four thousand dollars; that neither Felton nor Loomis, by reason of their long acquaintance and friendship for said Sayward, were desirous of availing themselves of the benefit of the excess in value of said stock above the amount necessary to satisfy said indebtedness, but were each desirous that said Sayward should have the benefit of such increased value, and were ready and willing to give him the preference over all other persons in the purchase or redemption of said stock, and were willing that he should have said stock upon the payment of the sum of fifty thousand dollars therefor.

That thereupon said W. T. Sayward and the defendant Houghton entered into this agreement: That said Houghton should advance the sum of fifty thousand dollars for the purchase of the stock from Loomis, and that Sayward should procure said stock to be transferred by Loomis to Houghton, the same to be held by Houghton for the benefit of Sayward, upon the trust and condition that the latter should, "on the tender by him to said Houghton, within six months, of the sum so to be advanced by said Houghton for the purchase of said stock from said Loomis as aforesaid, with interest thereon from the date of said advance to the date of said tender, together with five thousand ($5,000) dollars as a bonus to said Houghton, receive from said Houghton a transfer of all of said stock"; that in pursuance of said agreement the money was so advanced by Houghton, and Sayward, on March 24, 1887, procured said stock to be transferred and delivered by Loomis to Houghton.

That thereafter, on June 11, 1887, Sayward died, and plaintiff was duly appointed administrator of his estate; that on September 15, 1887, and within six months from the date of the payment and advancement of said money by Houghton, plaintiff, as such administrator, tendered and offered to Houghton the full amount required to be paid by plaintiff's intestate under said agreement, including a five thousand dollars bonus, and demanded a transfer and delivery of the stock; but that Houghton repudiated said agreement and refused said tender, and refused to deliver or transfer said stock. That plaintiff has ever since been, and is now, ready, able, and willing to pay said Houghton the full amount required to be paid under said contract, upon the transfer and delivery of said stock.

The prayer is, among other things, that Houghton be declared to hold said stock in trust for plaintiff's intestate, and that he be required to transfer and deliver the same to plaintiff as such administrator, upon the payment of the sum required under the terms of the contract.

We think the complaint states a cause of action and that the demurrer was improperly sustained. Respondent construes the action as one purely for the specific performance of a contract which he contends is wholly lacking in mutuality; that while the complaint alleges a promise on his part to convey, it discloses no corresponding obligation upon the part of plaintiff's intestate to purchase, but merely an option so to do, which could not have been enforced, and that therefore the contract alleged is one which equity will not enforce. But, assuming that the element of mutuality was lacking at the time the contract was entered into, it was supplied upon the offer of performance being made by plaintiff, since thereby the remedy to enforce it clearly became mutual. An original lack of mutuality in the right to specific performance will not preclude the enforcement of the contract where this want has been removed at the time the action is brought. (*Thurber v. Meves, ante,* p. 35, and cases there cited; *Vassault v. Edwards,* 43 Cal. 458; *Woodruff v. Woodruff,* 44 N. J. Eq. 349.) The principle is well stated in the case last cited, where the objection was, as here, that the covenant sued on was lacking in mutuality, in that it gave complainant the right to purchase, but did not provide that he must do so.

The objection is thus answered: "It is laid down, as a general rule, that equity will not specifically enforce the performance of a contract where, from its terms, a right does not arise in favor of each party against the other, and where each party is not entitled to the equitable remedy of specific execution of such obligation against the other contracting party. (Pomeroy on Specific Performance, sec. 162.) But this rule is subject to the modification that, if the quality originally lacking should be subsequently supplied, the enforcement of the contract may be made possible. The language of Chief Justice Beasley in *Richards v. Green*, 23 N. J. Eq. 536, 537, will suffice to indicate how the contract under consideration is made mutual and enforceable.

"The chief justice says: 'It is true that there are exceptions to the rule that a court of equity will not perform unilateral contracts, as, for instance, in those cases where an agreement, which the statute of fraud requires to be in writing, has been signed by one of the parties only; or when the contract by its terms gives to one party a right to the performance which it does not confer upon the other, an example of which is exhibited in the instance of a lease for years which gives an option to the lessee of purchasing during the term. But it will be observed that when such contracts come to be enforced in equity they cease to be unilateral, for, upon the filing of the bill, the party who was before unbound puts himself under the obligation of the contract. By his own act he makes the contract mutual, and the other party is enabled to enforce it.' " Numerous other authorities might be cited in support of the same principle.

But we do not construe the action as being essentially one for the specific performance of the contract, except in so far as such relief is necessarily incidental to the enforcement of the plaintiff's rights in the premises. The action is more in the nature of an action to enforce a trust arising in favor of plaintiff's intestate to have the stock restored to him upon a compliance with the terms of the contract. Respondent contends that no such trust arose; that the transaction was in effect a purchase of the stock by him from Loomis, precisely as if it had been at sheriff's sale or other public vendue, with a mere promise by him to hold it for the benefit of Sayward, for which promise there was no consideration; and, there being no fraud or deceit alleged, no en-

forceable trust was created or resulted. But the case is clearly not one of that complexion. The transaction did not constitute a purchase of the stock by respondent with his own money or for his own benefit. In legal effect it amounted to a purchase by Sayward with money advanced for the purpose by Houghton, the title being taken in the name of the latter and the stock delivered to him to be held merely as security for the repayment of the money so advanced, with the stipulated compensation for its use. Such being the nature of the transaction, there was obviously no want of consideration for respondent's promise to return or transfer the stock; and that there resulted under the facts a right in Sayward to such transfer, upon compliance with the terms of the contract, we entertain no doubt.

There is no merit in the other objections to the sufficiency of the complaint. There is nothing in the nature of the contract rendering it obnoxious to the statute of frauds; nor is there anything in the objection that plaintiff cannot maintain the action— conceding that this question may be raised under the general demurrer. (Code Civ. Proc., sec. 1582; *Knowles v. Murphy,* 107 Cal. 111.) The case of *Janes v. Throckmorton,* 57 Cal. 387, does not negative the right of the administrator to maintain an action such as this. The offer or tender of payment was sufficient. Section 1500 of the Civil Code does not prescribe the mode of tender, but a method of "extinguishing" an obligation when that object is sought. (*Knowles v. Murphy, supra.*)

The judgment is reversed and cause remanded, with directions to overrule the demurrer.

Harrison, J., and Garoutte, J., concurred.

Hearing in Bank denied.

Upon the denial of the petition for a hearing in Bank, the following opinion was filed by Beatty, C. J., on the 7th of February, 1898:

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing of this case. As I construe the complaint it shows that Houghton purchased the stock for himself and merely gave plaintiff's intestate an option to purchase it from him upon payment within six months of fifty thousand dollars, with interest,

and a bonus of five thousand dollars. There was no advance of money to Sayward by way of loan and no personal obligation on the part of Sayward to pay Houghton anything. He merely bargained for an option to purchase.

For granting this option Houghton received a valuable consideration in being allowed at Sayward's request, and for his contingent benefit, to purchase the stock at a price below its real or estimated value. This consideration was sufficient to support Houghton's agreement granting the option, and Sayward's election to purchase and offer to perform, if made at any time within six months, would have supplied the element of mutuality necessary to warrant a decree of specific performance, if in other respects the contract was enforceable.

But if the action is one for specific performance (and I can regard it in no other light), the most serious question arises out of the fact that the intestate did not during his lifetime make his election to purchase, and the plaintiff, as administrator, has assumed to make it for him. He has, in other words, without any authority, so far as appears, from heir or creditor or the probate court, undertaken to bind the estate to pay Houghton fifty thousand dollars, with interest, and a bonus of five thousand dollars more in exchange for his stock. And, unless he has given Houghton the right to claim so much out of the assets of the estate in preference to creditors and heirs, the option has not been exercised—the estate is not bound, and if the estate is not bound Houghton is not bound. There must be mutuality of obligation when the action is commenced. To hold, therefore, that this is a case for specific performance would be to hold that an administrator of his own motion can appropriate the assets of an estate to the performance of an agreement to purchase resting in the option of his intestate, a doctrine to which the court should hesitate to commit itself.

The point made by respondent that the agreement set out in the complaint is within the statute of frauds (Civ. Code, sec. 1739) does not arise upon the demurrer, because it does not appear from the complaint that the agreement was not in writing. If, however, it was merely oral, and was, as I construe it, merely an agreement to sell, it was within the statute.

Neither does the objection that plaintiff's remedy is at law for

damages rather than in equity for specific performance arise on this general demurrer for want of facts. It is certainly doubtful whether—aside from the objections above referred to—the complaint states a case for equitable relief, but if those objections are unfounded it does state a cause of action.