[L. A. No. 20148. In Bank. Sept. 21, 1948.]

JOHN W. KING et al., Respondents, v. MADELINE M. STANLEY, Appellant.

Abraham Glicksberg and Marshall M. Malter for Appellant.

M. Lewis Lehman for Respondents.

SHENK, J.—This is an appeal from a judgment directing specific performance of an agreement for the purchase and sale of real property.

The plaintiffs, as buyers, sought performance by the defendant of an alleged contract of sale of two lots in Los Angeles County, for the purchase price of $4,000. There is no question of the ability of the parties to perform or of the adequacy of the consideration. The principal issue raised by the answer was the existence of a written contract executed by the defendant. The only evidence consisted of correspondence between the parties which the trial court found constituted an enforcible contract.

John W. King, designated herein as the plaintiff, wrote to the defendant: "In looking through the records I find that you are the owner of two lots on 4th Ave. in the 9100 block in Inglewood, Calif. If you are interested in disposing of one I would be willing to pay $1500.00 cash. Please reply to:— 1st Lt. John W. King. . . ." On November 27, 1945, by letter the defendant thanked the plaintiff for the offer saying she would like to sell both lots at $2,000 each and that she

thought the price would go even higher than $2,000 in a short time. The plaintiff then sent a telegram, dated November 29, 1945, to the defendant which read: "My father and I will purchase your lots at $2000 cash each will open escrow here and forward papers for signature if arrangements are satisfactory wire collect." December 2, 1945, the defendant wrote to the plaintiff as follows: "In reply to your telegram stating you would purchase both lots for $2,000 cash each. If you will take care of all necessary expenses of Escrow & any commission, if any, to be paid so I will net $4,000 in the deal you may start Escrow & send the papers to me for signature. The first half of the taxes for the year has been paid & there are no assessments due. Kindly inform me if this meets with your approval." On December 7, 1945, the defendant received from an escrow company a letter dated December 3, 1945, reading: "We enclose escrow instructions covering proposed purchase by J. W. King and wife of property you now own. Also enclosed is the deed . . . Your prompt return of the enclosures will assist us in proceedings with this transaction. . . ." Escrow instructions enclosed and signed by the plaintiffs directed the company to deliver the consideration of $4,000 provided a policy of title insurance with the usual exceptions showed title in plaintiffs as joint tenants free of encumbrances except the second half of 1945-46 taxes, which were to be prorated. In their instructions the plaintiffs agreed to pay the buyer's customary charges, also the seller's title and escrow charges. These instructions also specified 30 days for completion of the escrow. The defendant was requested to sign instructions containing the following pertinent provisions: "All the conditions and demands above are hereby approved and I will hand you the necessary documents called for on my part to cause title to be shown as above, which you are authorized to deliver upon payment to you for my account the sum of $4,000.00 and within the time provided . . . and you are hereby authorized to pay any bonds, assessments, and/or taxes and any encumbrances of record to show title as called for/or necessary to comply with same . . . Pay to _____ a licensed real estate broker . . . as a commission the sum of $_____. . . ."

The defendant was requested to sign the instructions and execute the deed and return both. On December 12, 1945, instead of complying she wrote the following to the escrow company: "In reply to your letter . . . I wish to refer to a

letter of Dec. 2nd, 1945, to Lt. J. W. King in which I requested he inform me if contents of the letter met with his approval. Having failed to receive a reply to that letter I assumed he had changed his mind about purchasing said lots. The papers you mailed me which arrived here Dec. 7th came as quite a surprise. I therefore decided not to sell the property at this time. Will you kindly cancel all papers regarding these lots & notify Lt. King. ·Thank you for your courtesy.''

An agreement for the purchase or sale of real property does not have to be evidenced by a formal contract drawn with technical exactness in order to be binding. A memorandum of the agreement (Civ. Code, § 1624(4)) is sufficient, and this may·be found in one paper or in several documents, including an exchange of letters or telegrams or both (*Breckinridge* v. *Crocker*, 78 Cal. 529 [21 P. 179]; *Niles* v. *Hancock*, 140 Cal. 157 [73 P. 840]; *Twisselman* v. *Cohn*, 57 Cal.App.2d 987 [136 P.2d 33]), or in a letter from the vendor to the purchaser which is accepted and acted upon by the latter (*De Rutte* v: *Muldrow*, 16 Cal. 505). The offer must be unequivocally accepted in order to be binding. In plaintiff's letter of November 23, there was an offer to purchase one lot which was rejected by the defendant who, at the same time, made a counteroffer to sell both lots at a price of $2,000 each. The plaintiff accepted the counteroffer and indicated his intent to open escrow to consummate the transfer. In her letter of acknowledgment the defendant added the qualification that the price stated should be net to her, with the possible exception of 1945-46 taxes and authorized the plaintiff, if satisfied, to open the escrow and send the papers for her signature, and indicate his approval. The plaintiff without delay opened the escrow which was the designated act of acceptance, and thereby and through the letter of the escrow company indicated his approval of the specified terms. The contract was complete when the escrow was opened and the letter of the escrow company was placed in the course of transmission to the defendant. (Civ. Code, §§ 1582, 1583).

There is no merit in the contention that the court could not ascertain with reasonable certainty from the writings of the parties the duty of each and the conditions of performance. (Civ. Code, § 3390(6); Rest., Contracts, 370; 23 Cal.Jur. 429, et seq.) Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of

their agreement. In the absence of express conditions, custom determines incidental matters relating to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, and the like. (*Janssen* v. *Davis*, 219 Cal. 783, 788 [29 P.2d 196]; *Wagner* v. *Eustathiw*, 169 Cal. 663, 666 [147 P. 561]; *Bisno* v. *Herzberg*, 75 Cal.App.2d 235, 241 [170 P.2d 973]; *O'Donnell* v. *Lutter*, 68 Cal.App.2d 376, 383 [156 P.2d 958].) ▮ The material factors to be ascertained from the written contract are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified (*Breckinridge* v. *Crocker, supra*, 78 Cal. 529; *Grafton* v. *Cummings*, 99 U.S. 100 [25 L.Ed. 366]; *O'Donnell* v. *Lutter, supra*, 68 Cal.App.2d 376). There is no question that these essential items were clearly determinable here. The defendant was the seller. ▮ The plaintiff was the person with whom she had negotiated as buyer and the fact that he sought to take title in the name of himself and his wife as joint tenants as a matter of convenience would not materially affect the agreement. As the transaction was to be cash it was immaterial to the seller whether the buyer took title in his own name, or with his wife, or with his father. The price to be paid was clearly $4,000 net; terms, cash on delivery of merchantable title. The property itself was sufficiently described in the parties' writings.

▮ The defendant contends that the escrow instructions did not follow the alleged contract obligations but included different terms which had not been accepted by her. Reliance is placed on the inclusion of an agreement to furnish certificate of title and of a direction for payment of commission by the plaintiffs. The escrow instructions were merely customary and expected directions to the escrow company to carry into effect the executory agreement. Such instructions do not take the place of the agreement of sale but merely carry it into effect (*Keelan* v. *Belmont Co.*, 73 Cal.App.2d 6, 12 [165 P.2d 930]). They are subject to modification (*Zlozower* v. *Lindenbaum*, 100 Cal.App. 766, 773 [281 P. 102]) without affecting the finality of the agreement already reached.

▮ It is true there was no express agreement to furnish a certificate of title. However, it was the duty of defendant to furnish a good and marketable title (*Crim* v. *Umbsen*, 155 Cal. 697 [103 P. 178, 132 Am.St.Rep. 127]; *Easton* v. *Montgomery*, 90 Cal. 307 [27 P. 280, 25 Am.St.Rep. 123]; *Turner*

v. *McDonald,* 76 Cal. 177 [18 P. 262, 9 Am.St.Rep. 189];
*Whittier* v. *Gormley,* 3 Cal.App. 489 [86 P. 726]) and the
right of the vendee to receive such marketable title is not
dependent upon the terms of the contract but is given by the
law itself (Civ. Code, § 3394; anno. 57 A.L.R. 1253, 1261).
Therefore the securing of title insurance by the plaintiff did
not impose any onerous or uncontemplated condition upon
defendant (*Smith* v. *Schrader,* 80 Cal.App. 478, 487 [251 P.
967]). Plaintiff by his instructions did not require a title
"satisfactory to purchaser" (*Parkside Realty Co.* v. *Mac-
Donald,* 166 Cal. 426, 434 [137 P. 21]; *Van Demark* v. *Cali-
fornia H. E. Assn.,* 43 Cal.App. 685 [185 P. 866]), which
might be deemed a new condition, but was merely attempting
to satisfy himself as to the merchantability of the defendant's
title. Title insurance is a contract to indemnify against
loss through defects in the title or against liens or encum-
brances that may affect the title at the time when the policy is
issued (*Rice* v. *Taylor,* 220 Cal. 629, 636 [32 P.2d 381]; *Title
Ins. & Tr. Co.* v. *Los Angeles,* 61 Cal.App. 232, 235 [214 P.
667]; *Foehrenbach* v. *German Am. T. & T. Co.,* 217 Pa. 331
[66 A. 561, 563, 118 Am.St.Rep. 916, 12 L.R.A. N.S. 465],
quoting definition from 1 Cooley on Insurance 12). It is
a reasonable method by which a vendee may determine the mer-
chantability of the vendor's title; and a seller may not refuse to
perform on the ground that his title is not as complete as the
one agreed to be conveyed (*Miller* v. *Dyer,* 20 Cal.2d 526, 529
[127 P.2d 901, 141 A.L.R. 1428]). The vendee could elect to
take such title as the vendor could convey. In any event there
was here no showing that the defendant could not convey good
title or that there would be any obstacle to the obtaining of
the certificate of title insurance. The escrow instruction
signed by the plaintiff that he was to pay the seller's title
and escrow charges constituted compliance with the defend-
ant's condition, which was unaffected by the addition of the
30-day time limitation. In a contract for the sale of
real estate the delivery of the deed and the payment of the
purchase price are dependent and concurrent conditions (Civ.
Code, § 1657; *Cates* v. *McNeil,* 169 Cal. 697, 706 [147 P. 944];
*Whittier* v. *Gormley, supra,* 3 Cal.App. 489). But it
was well within the contemplation of the parties that the
money should remain in the escrow for such time as would
be necessary to determine the matter of merchantable title,
and 30 days is a reasonable time for that purpose. Inasmuch
as the instructions were merely supplementary to the execu-

tory contract and not the contract itself, the parties could have arranged for a different period, since it also appeared by stipulation that the plaintiffs were ready, willing and able at all times from December 2, 1945, to perform.

The instruction which sought to give the defendant's permission for the payment of bonds, assessments, taxes and encumbrances of record to show title as called for, added to the contract no condition not agreed upon by the defendant in view of her representation that the only encumbrance of record was the lien for the second half of the 1945-46 taxes and of her obligation to furnish merchantable title.

It is true there was no direction in the instructions that the plaintiff would pay any sale commission, but neither was there a showing that the defendant was obligated to pay a commission. The blank provision in the instruction regarding payment of commission was that usually included in the forms for instructions. The mere absence of a specific instruction that the plaintiff would pay a nonexistent commission does not indicate a departure from the conditions which were accepted by him. If the defendant was so obligated, she should have furnished evidence thereof. No such showing was made.

There is no merit in the defendant's contention that all of the writings offered in evidence by the plaintiffs were merely part of the preliminary negotiations. There was no determinable intent to reduce these informal writings to a formal written contract. The existence of such intent would not necessarily prevent a binding obligation from arising, notwithstanding the contemplated written or formal contract was never executed (*Gavina* v. *Smith,* 25 Cal.2d 501, 504 [154 P.2d 681]; *Levin* v. *Saroff,* 54 Cal.App. 285, 289 [201 P. 961]), unless it also appeared that the parties agreed or intended not to be bound until a formal written contract was executed (*Patch* v. *Anderson,* 66 Cal.App.2d 63 [151 P.2d 644]). Here the converse may justifiably be found, and the informal writings became a binding contract notwithstanding the agreement was not reduced to a more formal writing. None of the essential terms was left for future determination. The mere state of mind of the parties is not the object of inquiry. The terms of the contract are determinable by an external, not by an internal standard—or by what has been termed the objective rather than the subjective test. (*Zurich etc. Assur. Co.* v. *Industrial Acc. Com.,* 132 Cal.App. 101, 104 [22 P.2d 572].) Measured by any reasonable stand-

ard there is here mutual assent to a contract which is sufficiently certain so that the court was within its power in decreeing specific performance. (*Remmers* v. *Ciciliot,* 59 Cal. App.2d 113 [138 P.2d 306]; *Fleishman* v. *Woods,* 135 Cal. 256 [67 P. 276]; Rest., Contracts, 360.)

Since there was no lack of mutuality of the remedy at the time of suit (*Jones* v. *Clark,* 19 Cal.2d 156, 161 [119 P.2d 731]; *Sayward* v. *Houghton,* 119 Cal. 545, 549 [51 P. 853, 52 P. 44]; *Van Fossen* v. *Yager,* 65 Cal.App.2d 591 [151 P.2d 14]) there is no impediment to performance by the defendant in this action, and the plaintiffs were entitled to the equitable relief as determined by the trial court.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.