[Civ. No. 30029.   Second Dist., Div. Two.   Aug. 11, 1966.]

DAVID S. WOLF et al., Plaintiffs and Appellants, v. ROBERT PRICE et al., Defendants and Respondents.

Moss, Lyon & Dunn and George C. Lyon for Plaintiffs and Appellants.

Harry B. Seelig and Sidney E. Baskin for Defendants and Respondents.

ROTH, P. J.—This is an appeal from a summary judgment in favor of respondents. The only issue is whether there are any triable issues of fact.

Appellants, husband and wife, filed their action for breach of a contract by respondents to purchase certain property on Vermont Avenue in Los Angeles. The contract is evidenced by escrow instructions entered into by appellants and the respondent Price as the nominal purchaser. The other respondents were Price's nominees. All respondents answered. The respondents Oscar Topper, Irwin Topper and Harry Groman, partners in the respondent Vermont-Browning Company, here for convenience referred to as the partnership, denied that they had entered into the contract alleged in the complaint or any other contract, and denied that Price had assigned to them his interest in the escrow, or that they accepted any such assignment. Respondents counterclaimed for the recovery of $1,500 paid to appellants out of escrow.

Respondents' motion for summary judgment was granted. A judgment was entered dismissing appellants' complaint and in favor of Price for $1,500, with costs to all respondents. Appellants' motions to set aside the judgment, for a new trial

168

and for leave to file an amendment to the complaint upon the granting of a new trial, were denied.

The declaration of appellant David Wolf in opposition to the motion states that in November 1962, appellants were the owners of certain real property on Vermont Avenue, subject to an oil and gas lease. During that month they were contacted by a representative of Charles Dunn Company, real estate agents, (hereinafter referred to as Dunn), who said he was looking for a full block of property to be purchased by some people who wanted to build an office building, and asked appellants to put a price on their property. Later, when Dunn informed appellants that his company had exclusive listings on all the property in the block except appellants' property, appellants priced their property at $38,500. Standing alone they valued it at $20,000. "The next day, . . . Mr. Vierhielig [the real estate agent for Dunn] brought over a 90-day exclusive listing for $38,500. Mr. Vierhielig stated that the property must be free of any store leases or apartment leases that would tie up the property for any length of time. My son, Robert Wolf, then stated to Mr. Vierhielig that we would like to keep the oil and gas mineral rights to the property. Mr. Vierhielig said the buyers wouldn't stand for that, that they would want all of the mineral rights that went with the property. My son, Robert Wolf, said that there was an oil and gas lease and that we would like to keep that and he said no, the people will not take it unless the oil and gas lease goes with it. After this discussion, my wife and I signed the 90 day exclusive listing for $38,500."

An escrow was opened in January 1963 at Security Title Insurance Company and Dunn mailed proposed escrow instructions to appellants. Appellants returned these instructions to Dunn with proposed changes indicated thereon in longhand. The pertinent portions of the escrow instructions as rewritten and signed by Price and appellants, are as follows: "On or before 7 months from the date of these instructions, I will hand you $37,000.00; I hand you herewith $1,500.00, making a total purchase price of $38,500.00, which you are instructed to use when, . . . you are able to procure a standard form OWNERS Policy of Title Insurance, . . . showing title vested in: ROBERT PRICE, or Assignee SUBJECT TO: . . . .

"(2) Covenants, conditions, restrictions and public utility easements of record, . . . .

"The completion of this escrow is contingent on the following: . . . 2. Buyers written approval, at his sole discretion, of Preliminary Report of Title, including covenants, conditions,

restrictions, easements, rights and rights of way of record. Buyers written approval or disapproval shall be deposited in escrow within 15 days of submission of said report of title, *but in any event, no later than Feb. 23, 1963. Buyers' failure to disapprove in writing this contingency on or before Feb. 23, 1963 shall be deemed an approval of this contingency.* Buyers written approval of item (2) shall constitute a waiver of said contingency. . . . In the event Buyer deposits written approval or fails to give written disapproval on or before Feb. 23, 1963, you are to immediately release the [$500] *$1,500.00* to Seller, without any further instructions, and this escrow shall be completed within 7 months from date of these instructions or sooner, at Buyers option, provided however that if Buyer shall serve written notice of intention to cancel on escrow holder and Seller within 180 days of the date of these instructions *because contingency cannot be satisfied,* then this escrow will be cancelled without further liability on either party and the Seller shall retain the [$500] *$1,500.00,* and the Buyer shall pay all escrow cancellation charges. . . . As a matter of agreement with which Security Title Ins. Co. is to be in no way concerned and is mentioned for references purposes only, it is understood that Seller has agreed to deliver said premises [free and clear of all tenancies, leases or occupants] *subject only to month to month tenancies.*"[1]

The preliminary title report showed that in addition to certain encumbrances, the property was subject to a 10 year community oil and gas lease affecting "all that portion of said land and other property lying below a depth 500 feet from the surface thereof, without the right of surface entry." Respondents never disapproved any part of this report in writing, and the $1,500 was released to appellants. Respondents never served notice of their intention to cancel the escrow.

The last day to close the escrow was August 14, 1963. In July, the escrow holder prepared and sent to appellants a grant deed of the property which conveyed the property to the partnership "together with all of Grantors right, title and interest in and to" the oil and gas lease. Appellants executed the deed and returned it to the escrow holder on July 29 with a letter asking the escrow holder to advise them in writing if there was anything additional needed from them to complete the escrow. They received no reply to this letter.

---

[1]The omissions from the original instructions are in brackets and the additions are in italics.

David Wolf also declares that sometime during the early part of August of 1963 the declarant and his son Robert went to the office of the Charles Dunn Company and there met with Oscar and Irwin Topper, Harry Groman, Richard Dunn, and Mr. Vierhielig. After a discussion concerning an extension of time on the escrow, "Robert Wolf asked Irwin Topper 'We have lived up to all our end of the instructions, haven't we?', and he said 'Yes.'

"Nothing was said by any of the defendants regarding the community oil lease on the property or the fact that the rights to the community oil lease were included in the deed."

Declarations of Irwin Topper and Robert Price were submitted in support of the summary judgment motion. In essence, these respondents declare that prior to the execution of the grant deed by appellants, they assumed the property would be transferred free of all encumbrances except the ordinary "covenants, conditions, restrictions and public utility easements of record." Although the oil and gas lease appeared on the preliminary title report, respondents assumed it would be removed before final conveyance. However, when respondents were advised that the grant deed executed by appellants on July 29 and deposited in escrow shortly thereafter, contained a provision for the community oil and gas lease, respondents promptly cancelled the escrow.

Thereupon, appellants demanded return of the deed but requested that the escrow remain open.

We agree with appellants' claim that their affidavit in opposition to the motion for summary judgment raises several triable issues of fact.

The minutes of the trial court recite: "The contract, the dated escrow instructions of January 14, 1963, does not provide the land can be subject to a lease, but only 'covenants, conditions, restrictions and public utility easements of record.' "

The trial court agreed with the contention of respondents that the escrow instructions contained all the terms of the contract and required conveyance of the property subject only to standard covenants, conditions and restrictions and "month to month tenancies."

The escrow instructions, however, also state that the failure of respondents to expressly disapprove the preliminary title report "including covenants, conditions, restrictions, easements, *rights* and rights of way of record" (italics added) would constitute an approval of the report and would

satisfy an express condition to the closing of the escrow. The language of this contingency goes beyond the other provisions in the escrow instructions relating to covenants, conditions and restrictions.

■ An oil and gas lease is in the nature of a *profit a prendre* and gives an interest in land. (See *Wall* v. *Shell Oil Co.*, 209 Cal.App.2d 504, 510 [25 Cal.Rptr. 908].) While in ordinary legal parlance the phrase "covenants, conditions and restrictions" may not include such interests, it is difficult to avoid their inclusion in the word "rights".

■ In addition, the provision that the property is to be delivered "subject only to month to month tenancies" would appear on its face to refer only to possessory tenancies in the buildings on the premises. This interpretation arises from the phrase "free and clear of all tenancies, leases or occupants" which was stricken from the instruction form and replaced by the month to month tenancies clause. It is clear from the language of the escrow instructions that the parties were concerned with occupants of the premises who could be removed within a short period of time.

From the foregoing, it is clear that the escrow instructions are sufficiently ambiguous to require additional evidence to aid in their interpretation. Where such an ambiguity exists, summary judgment may not be granted. (*Walsh* v. *Walsh*, 18 Cal.2d 439, 444 [116 P.2d 62]; *Kern* v. *Henry*, 138 Cal.App. 46, 52 [31 P.2d 454].)

We need not rely solely on the ambiguity of the escrow instructions, however, in order to discover a triable issue of fact. The minutes of the trial court excerpted above reveal a basic misapprehension concerning the nature of the contract of sale at bench. That contract was not embodied finally in a writing. The escrow instructions at bench were not so complete and final a contract in writing to preclude a showing of what the actual contract was. ■ Although escrow instructions can be so complete as to constitute a final contract which may not be varied, the designation "escrow instructions" does not make it one per se. The cases hold that escrow instructions are a convenience to carry out a contract which generally has preceded their use. ■ "The use of an escrow is simply a customary and convenient method of carrying out an agreement of sale. ■ It does not supplant the basic agreement although they may be read together to ascertain intent. (*King* v. *Stanley*, 32 Cal.2d 584, 589 [197 P.2d 321]; *Keelan* v. *Belmont Co.*, 73 Cal.App.2d 6, 12 [165 P.2d 930]; *Katemis* v.

*Westerlind,* 120 Cal.App.2d 537, 542 [261 P.2d 553] ; *Ashburn* v. *Miller,* 161 Cal.App.2d 71, 80 [326 P.2d 229] ; *Karras* v. *Title Ins. & Guar. Co.,* 118 Cal.App.2d 659, 664 [258 P.2d 866] ; *Leiter* v. *Handelsman,* 125 Cal.App.2d 243, 250 [270 P.2d 563].)'' *(Tancredi* v. *Garrett,* 210 Cal.App.2d 818, 822 [27 Cal.Rptr. 52].) ▉ The escrow instructions merely constitute a memorandum of the basic agreement sufficient to satisfy the statute of frauds (see *King* v. *Stanley,* 32 Cal.2d 584, 588-589 [197 P.2d 321].) The instructions do not supplant the actual agreement of sale but merely carry it into effect, *(King* v. *Stanley, supra,* at p. 589.)

▉ Once the statute of frauds is satisfied, there is no compelling reason why the actual agreement may not be proved in part by oral evidence. ▉ The only elements of the contract required by the statute to be written are the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred, describing it so it may be identified. *(King* v. *Stanley, supra,* at p. 589.)

As noted above, appellants declare that prior to the execution of the escrow instructions, they discussed the terms of the sale with Mr. Vierhielig who purported to act as agent of the buyers. During the course of that conversation, it was agreed that the buyers would take the property subject to the community oil and gas lease and free of any long term store or apartment leases. ▉ Assuming, without deciding, that Mr. Vierhielig was in fact the agent of the buyers, the terms of the contract of sale obviously favor appellants' position. As illuminated by this evidence, the month to month tenancies clause in the escrow instructions, so heavily relied upon by respondents, clearly refers only to tenants occupying the structures on the property.

It is possible, of course, that Mr. Vierhielig was not acting as agent for the respondents at the time these preliminary agreements were made. ▉ It is well established, however, that agency is a question of fact. *(Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 278 [231 P.2d 816] ; *Wright* v. *Lowe,* 140 Cal.App.2d 891, 896 [296 P.2d 34].) ▉ Although under the escrow instructions, the sellers (appellants) were responsible for the payment of Mr. Vierhielig's commission, that fact alone does not preclude a finding that the broker was acting as agent for the buyers (respondents). *(Stephens* v. *Ahrens,* 179 Cal. 743, 746 [178 P. 863] ; *Sands* v. *Eagle Oil & Refining Co., Inc.,* 83 Cal.App.2d 312, 318 [188 P.2d 782] ; *Wright* v. *Lowe, supra,* at p. 897; *Bonaccorso* v.

*Kaplan,* 218 Cal.App.2d 63, 68 [32 Cal.Rptr. 69].) The broker is ordinarily held to be the agent of the party who first employs him. (*Stephens* v. *Ahrens, supra,* at p. 746.)

It should be noted, in addition, that an equally strong case for appellants may be made on the question of waiver. Appellant David Wolf declares in his affidavit that at a conference sometime after the deposit of the grant deed into escrow, Irwin Topper, one of respondents, specifically stated that nothing more need be done on the part of appellants in order to consummate the transaction. The declaration of Irwin Topper that the conference was held prior to July 29 only serves to place that fact in issue at trial.

In addition, the escrow instructions provide for a disapproval of the preliminary title report (which showed the existence of the oil and gas lease) by February 23, 1963, and the cancellation of the escrow because of the failure of the title report contingency within 180 days from the date of the instructions. It appears to be undisputed that respondents did neither.

In *Jolin* v. *Spira,* 94 Cal.App.2d 356, the court states at page 360 [210 P.2d 704] : ''Nonperformance of conditions set up in escrow instructions 'may be waived by the party who is entitled to demand performance. Failure to perform within the specified period may be waived; and indeed a party may waive any condition . . .' [Citations].

''A waiver is defined in *Bastanchury* v. *Times-Mirror Co.,* 68 Cal.App.2d 217, 240 [156 P.2d 488], as 'the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right and may result from an express agreement or be inferred from circumstances indicating an intent to waive. (*Davis* v. *Brinkhouse Hotel Co.,* 74 Colo. 199 [219 P. 1074] ; *Johnson* v. *de Waard,* 113 Cal.App. 417 [298 P. 92].)

''  .   .   .   .   .   .   .   .   .   .   .   .   .

''Whether there has been a waiver is ordinarily a question of fact. (*Lyons* v. *Brunswick-Balke etc. Co.,* 20 Cal.2d 579, 583 [127 P.2d 924, 141 A.L.R. 1173], citing 25 Cal.Jur. 932.) ''

Applying these rules to the facts as averred in the affidavits of both parties, it is apparent that the question of respondents' waiver presents substantial issues of fact to be ultimately determined at trial.

After the motion for summary judgment was granted, appellants moved for a new trial and for leave to amend their

complaint by adding a fourth cause of action alleging as follows: "Defendants at all times, on and after November 30, 1962, had knowledge that said property was subject to a community oil and gas lease. . . .

"Defendants thereafter, with full knowledge of the fact that a community oil and gas lease was in existence on said property waived any requirement of the escrow (if such requirement exists, which these plaintiffs deny) that said property be transferred to defendants free and clear of said community oil and gas lease. Plaintiffs relied upon such waiver and made no effort, prior to the date for close of said escrow, to release said property from such oil and gas lease. Said waiver resulted from the express statements of the defendants and their agents and from the actions of defendants and the surrounding circumstances indicating the intention of the defendants to waive any such requirement of the escrow."

In *Desny* v. *Wilder*, 46 Cal.2d 715 [299 P.2d 257], after summary judgment for defendant had been granted, plaintiff moved for an order setting aside the judgment and for leave to file an amendment to his amended complaint. The court held at page 752 that the proposed amendment "would not constitute an attempt to state facts which would give rise to a wholly distinct and different legal obligation against defendants, but would only make the pleading conform to the plaintiff's testimony as to the manner in which his story was submitted to defendants. It is for defendants' claimed use of the same story as that already alleged that plaintiff still would be seeking recovery under the proposed amendment. Such amendment should have been allowed."

For the cases relating to the necessity for pleading a waiver by defendant, see 24B McKinney California Digest, Waiver, section 9, p. 529.[2] *Hanna* v. *Hirschhorn*, 112 Cal.App. 438 held at p. 440 [296 P. 891] that "where a cause of action depends on proof of waiver it must be specially pleaded," but great liberality should be shown by the trial court in permitting amendments to pleadings where the proposed amendment will not radically change the issues or work great delay or prejudice the rights of the adversary and held it to be preju-

---

[2]Note, *Berliner* v. *Travelers' Ins. Co.*, 121 Cal. 451 [53 P. 922], holding that under general allegations of performance of conditions of contract, proof of a waiver is admissible without alleging the waiver, and *Arnold* v. *American Ins. Co.*, 148 Cal. 660 [84 P. 182, 25 L.R.A. N.S. 6], holding that plaintiff may prove waiver by way of evidence in reply to a defense without necessity of pleading it.

dicial error to refuse to permit such an amendment. The court said in *Hanna,* at page 440:

"From the fact that by the allegations contained in plaintiffs' complaint it was alleged that performance was not due as of the date specified in the agreement, but 'that the time for performance was extended,' and that as extended, the plaintiffs had offered performance which had been denied or refused by defendants—it was, or at least should have been, made manifest to defendants that plaintiffs relied upon either an express or an implied extension by defendants of time within which to comply with the terms of the contract. However, it is plain that a waiver of exact time of performance might not be the equivalent of an extension of time, since at least the former might be for a definite period and the latter might be indefinite in that regard. But in the circumstances of either situation, defendants were placed on notice that, by reason of some unspecified acts or declarations of defendants, plaintiffs asserted a right to perform the conditions provided for by the contract at a date subsequent to that specified therein as a limit for such performance; and from their denials set forth in their answer, defendants were presumed to be ready to rebut such evidence as might be adduced by plaintiffs in support of their allegations."

It is clear from the facts at bench, even without the application of the rules of construction re summary judgment continuously enunciated by the cases and recently summarized in *Wilson* v. *Bittick,* 63 Cal.2d 30 [45 Cal.Rptr. 31, 403 P.2d 159], that the existence of the oil and gas lease was disclosed to and assumed by the respondents in the oral contract, by the ambiguities in the escrow instructions, by the preliminary title report in February 1963 and in conversations after the oral contract. The escrow instructions expressly gave respondents the right to disapprove the title report. The report was not disapproved in writing as required, and the $1,500 was released to appellants by the escrow holder, as required by the very instructions respondents rely upon.

The summary judgment is reversed. The court is instructed to permit appellants to file their proposed amendment to the complaint. Respondents are to bear all costs on appeal. The order denying appellants' motion to set aside summary judgment and for new trial and for leave to file amendment to complaint, is not appealable. (*Litvinuk* v. *Litvinuk,* 27 Cal.2d 38, 44 [162 P.2d 8].) The appeal therefrom is dismissed.

Herndon, J., and Fleming, J., concurred.