[Civ. No. 8032.   Fourth Dist., Div. Two.   Oct. 28, 1966.]

JAMES GOODMAN et al., Plaintiffs and Respondents, v. COMMUNITY SAVINGS AND LOAN ASSOCIATION, Defendant and Appellant.

14

Austin & Austin, Irving P. Austin and Nathan Mudge for Defendant and Appellant.

Fred D. Johnston, Rimel, Harvey & Helsing and Jack J. Rimel for Plaintiffs and Respondents.

TAMURA, J.—Plaintiffs, purchasers of an apartment house complex consisting of 32 8-unit buildings in the City of Orange, brought an action against defendant, the vendor, seeking a declaration of rights under the contract of sale, damages for defendant's failure to complete the buildings for occu-

pancy and failure to complete off-site improvements, and for an injunction against a threatened foreclosure. The trial court found that defendant breached the agreement, awarded plaintiffs damages in the sum of $40,000 and decreed that defendant hold plaintiffs harmless from all materialmen and mechanics' liens arising out of any unpaid on-site or off-site work which defendant had agreed to complete. Since the nature and extent of the liens could not then be determined, the court retained jurisdiction to make such further orders respecting such liens as may be necessary to carry out its decree. Defendant appeals from the judgment.

In June 1963 when plaintiff James Goodman first became interested in the property, the unpaved streets, dirt piled along the windows and the presence of debris and rubble gave it the appearance of being distressed property. Upon inquiry he ascertained that the property had recently been foreclosed by defendant Community Savings and Loan Association and was directed to Mr. Joseph, an assistant vice president of defendant. Mr. Joseph informed plaintiff that defendant would consider a sales price of one million five hundred and twenty thousand dollars, and would probably carry back a substantial portion of that amount. Mr. Joseph stated that the off-site improvements would be completed as soon as possible.

Immediately following the meeting, plaintiffs transmitted to defendant a deposit receipt dated June 25, 1963, executed by both plaintiffs, together with a certified check for $10,000. The document provided in relevant part as follows: ''Received from James Goodman, herein called Buyer, the sum of Ten Thousand and no/100 Dollars ($10,000.00) evidenced by personal check, as deposit on account of purchase price of $1,520,000.00 ($47,500.00 each 8 Unit Building) for the purchase of property, situated in Collins and Newport Freeway, County of Orange, California, described as follows: 32 8 Unit buildings consisting of 4—1 Bedroom and 4—2 Bedroom each building. (Total—256 Apartments). Buyer will deposit in escrow with Community Savings & Loan the balance of the purchase price within 10 days from date of acceptance hereof by Seller, as follows: $40,000.00 Cash plus $39,500.00 1st T.D. each building payable $270.00 month including interest at 6.6% for 25 years and seller to carry 2nd T.D. each building of $6,347.50 payable $65.00 month inc. interest at 7% for 3 years, Seller to complete buildings, ready for occupancy with notice of completion, streets, sidewalks, lawns and landscaping, carpets, drapes, range and oven, garbage disposal, fire extin-

guishers as required. No payments for 3 months after notice of completion and interest only for following nine months. Buyer to receive possession upon satisfaction of completion. Buyer to receive letter authorizing rental committments, advertising and bill boards prior to completion.''

Within a few days, plaintiff James Goodman received a call from Mr. Joseph informing him that the term of the second trust deeds should be shortened from three years to eighteen months. Plaintiffs thereupon transmitted a letter dated July 1, 1963, to defendant, which read: ''This is your authority to amend the subject offer, pertaining to the period of the 2nd Trust Deed from three (3) years to eighteen (18) months.''

Shortly thereafter plaintiffs received a further call from Mr. Joseph informing them that defendant would not agree to a three months' period without any payments and with interest only for the following nine months but would compromise if plaintiffs would agree to payments of principal and interest commencing on the fifth month. Pursuant to this call, plaintiffs transmitted to defendant a letter dated July 5, 1963, which read: ''This is your authority to amend the subject offer, pertaining to the payment schedule as follows: NO payments or interest for five (5) months, with regular amortization payments to start six (6) months from possession of property (after filing of Notice of Completion). Inasmuch as the due date for the 2nd Trust Deeds has been advanced to 18 months instead of 36 months, we must request that NO prepayment penalty be imposed, if property is refinanced within this 18 month period.''

The language of the deposit receipt and the two letters was suggested by Mr. Joseph.

On July 17, 1963, defendant's board of directors approved the sale of the property to plaintiffs. Mr. Joseph immediately called plaintiffs, congratulated them and told them that their offer had been accepted by the board of directors.

On August 26, 1963, plaintiffs went to defendant's office to complete the transaction. Plaintiff Joseph Goodman, father of plaintiff James Goodman and a member of the California Bar, informed Mr. Bickett, vice president of defendant, that plaintiffs would not sign the notes and trust deeds until they first saw a written acceptance ''of the deal'' by defendant. Mr. Bickett thereupon prepared and signed the following letter, dated August 26, 1963, addressed to plaintiffs: ''Please be advised that on July 17, 1963, the Board of Directors of Community Savings and Loan Association approved your bid for

the purchase of thirty-two (32) lots known as lots 2 to 20 inclusive and lots 24 to 36 inclusive of Tract No. 3754, for the purchase price of $1,520,000.00. This sale subject to the terms of our Escrow No. 63-3357.

''At your request and at no liability to this Association, you have our authority to commence your promotion and advertisement for the rental of said property with the understanding that possession of said property will not be given to you until the completion of the off-site improvements which are to be approved by the City of Orange and Community Savings and Loan Association.''

Plaintiffs thereupon signed the notes and trust deeds, after which they were requested to sign escrow instructions. Plaintiff Joseph Goodman inquired as to the necessity for the instructions because ''We have made our deal,'' to which Mr. Bickett replied, ''This is what they want.'' Plaintiffs examined the instructions and at first objected to the deletion of the provision relating to the proration of taxes, but when Mr. Bickett informed them that the off-site and on-site improvements would be completed within two weeks or at most three weeks, consented to the deletion. Plaintiffs then questioned the provision allowing buyers a credit of only $3,000 for landscaping, but Mr. Bickett indicated that it could be accomplished at $100 per building and that was all the seller was willing to allow. Plaintiffs then signed the instructions which described the property, set forth the purchase price, the amounts of the 1st and 2d deeds of trust and when payments thereunder were to commence—March 10, 1964, on the 1st and March 7, 1964, on the 2d—and provided that the property was to be free of all encumbrances, subject to covenants, conditions, reservations, easements, and rights-of-way of record. The instructions also contained the following typed provisions: ''Possession to be given to Buyers at the completion of the off-site improvements. Sellers agree to allow $3000.00 towards purchase price (credit of cash through escrow) for landscaping which the Buyers will complete on subject properties.''

In August 1963 the buildings were not yet ready for occupancy and, although the sewer and water lines had been installed, other off-site improvements such as streets, berme, curbs, gutters, and some street lights remained to be completed and installed. The on-site work continued sporadically until February 1964 and the off-site improvements were not completed until February 27, 1964, when the last building was released by the city for occupancy. In order to make the build-

ings suitable for occupancy plaintiffs expended substantial time and money.

The keys to the premises were turned over to plaintiffs upon the recordation of the deed on Septmeber 24, 1963, but since the buildings were not ready for occupancy, plaintiffs did not commence renting until November 1963, and then only as and when the buildings were completed and as the off-site work progressed. There was evidence that plaintiffs lost substantial rental income because of the delay in the completion of the on-site and off-site improvements.

When payments became due on the note and trust deeds in March 1964, plaintiffs withheld payment, instituted the present action, and deposited with the clerk of the court all payments due on the promissory notes executed by them as part of the purchase price.

At the conclusion of the trial, the court first determined the issue of liability. Finding for plaintiffs on that issue, the court suggested that counsel consider the possibility of agreeing upon the amount of damages. Following recess and a discussion in chambers between court and counsel, the court announced that it would use the figure of $40,000 in fixing damages.

On the material issues the court found as follows: Defendant agreed in writing to complete the buildings for occupancy, and to complete the off-site improvements but failed to perform those obligations. Plaintiffs, at a cost of $6,553, did some of the work on the buildings defendant was obligated to perform but additional work was required, the reasonable cost of which was $8,447. Because defendant failed to pay for some of the off-site work done at its instance, mechanics' and material-mens' liens amounting to approximately $50,000 have been filed against the property and actions have been instituted to foreclose the liens. The institution of such actions has damaged plaintiffs' credit and business standing. Defendant's failure to complete the off-site improvements within a reasonable time, which the court found to be October 15, 1963, caused plaintiffs to suffer loss of rental income. The reasonable rental value of the premises during the time plaintiffs were thus deprived of their use was $25,000. The court found that defendant had threatened to institute foreclosure proceedings unless payments on the notes were made when due and had also threatened to transfer the notes or some of them to holders in due course. The court concluded that plaintiffs were entitled to a judgment for $40,000 and to be saved harmless

from all mechanics' and materialmens' liens resulting from off-site and on-site work which defendant agreed to complete or cause to be completed. Judgment was entered accordingly.

■ Preliminarily, since the court reserved jurisdiction to make such further orders as it deemed proper respecting mechanics' and materialmens' liens, there is a question whether the judgment from which this appeal has been taken is a final appealable judgment. The only matter left for future consideration, however, was the enforcement of the decree respecting the obligation of defendant to hold plaintiffs harmless from liens and encumbrances. The judgment is therefore a final appealable judgment within the meaning of section 963, subdivision 1 of the Code of Civil Procedure. (*Guaranty Trust & Savings Bank* v. *City of Los Angeles,* 186 Cal. 110 [199 P. 35] ; *Zappettini* v. *Buckles,* 167 Cal. 27 [138 P. 696] ; see *Lyon* v. *Goss,* 19 Cal.2d 659, 669-670 [123 P.2d 11] ; *Meehan* v. *Hopps,* 45 Cal.2d 213, 217 [288 P.2d 267].) ■ The fact that the court retained jurisdiction to carry its order into effect did not deprive the judgment of finality. (*Heath* v. *Kettenhofen,* 236 Cal.App.2d 197, 204 [45 Cal.Rptr. 778] ; *Zappettini* v. *Buckles, supra.*)

■ It is further noted that although the notice of appeal states that the appeal is from "the judgment and the whole thereof," defendant does not attack that portion of the decree respecting defendant's obligation to hold plaintiffs harmless from liens and encumbrances, and in its supplemental brief filed herein it "withdraws" its appeal from that portion of the decree. This appeal, therefore, concerns only that portion of the judgment awarding plaintiffs damages in the sum of $40,000.

Although defendant raises a number of purported issues on this appeal, its basic contentions are (1) that the contract of sale did not obligate defendant to complete the off-site improvements, and (2) that the evidence was insufficient to support the damages awarded.

Defendant argues that the escrow instructions constituted the entire contract of sale and since it did not contain a provision obligating the seller to complete the off-site improvements, the trial court erred in concluding that it was so obligated.

■ Defendant stands on the legal proposition that where a writing contains all of the elements necessary to constitute an enforceable contract, it is an integrated agreement and parol evidence may not be received to vary its terms. (*Thoroman* v. *David,* 199 Cal. 386, 390 [249 P. 513].) That rule, however, is

subject to the qualification that even where a writing appears on its face to constitute a complete agreement, where several documents relating to the same transaction are offered as constituting the agreement, extrinsic evidence to show that the several documents were intended to constitute a single agreement may be received without violating the parole evidence rule. (*Maier* v. *Paul X. Smith Corp.*, 205 Cal.App.2d 207, 218-220 [22 Cal.Rptr. 758]; *Roberts* v. *Reynolds*, 212 Cal.App.2d 818, 824 [28 Cal.Rptr. 261]; *Cadigan* v. *American Trust Co.*, 131 Cal.App.2d 780, 784-786 [281 P.2d 332]; *Mayers* v. *Loew's, Inc.*, 35 Cal.2d 822 [221 P.2d 26]; Witkin, Cal. Evidence, 403.) ▉ The above qualification is particularly applicable where escrow instructions are relied upon as constituting the entire agreement. ▉ While such instructions may constitute the contract (*Thoroman* v. *David, supra*), they are customarily merely deemed to be directions to carry into effect an executory agreement. (*King* v. *Stanley*, 32 Cal.2d 584 [197 P.2d 321]; *Wolf* v. *Price*, 244 Cal.App.2d 165 [52 Cal. Rptr. 889]; *Leiter* v. *Randelsman*, 125 Cal.App.2d 243, 250 [270 P.2d 563].) Cases like *Thoroman* v. *David, supra*, upon which defendant relies, are clearly distinguishable. They involve only one writing and an attempt to modify that writing by evidence of an oral agreement. (See *Cadigan* v. *American Trust Co., supra*, at p. 786.) Moreover, an oral agreement relating to off-site improvements may be shown to exist even though the escrow instructions make no mention of it. (*Pollyanna Homes, Inc.* v. *Berney*, 56 Cal.2d 676 [16 Cal.Rptr. 345, 365 P.2d 401].)

▉ The evidence in the instant case clearly supports the trial court's conclusion that the several writings—deposit receipt, letters, and the escrow instructions—were intended to comprise the agreement of the parties. The deposit receipt was submitted to defendant following a discussion with Mr. Joseph who suggested its terms and language. The terms of the deposit receipt were subsequently modified by plaintiffs by the two letters heretofore mentioned, again in accordance with Mr. Joseph's suggestions. When the board of directors acted upon the proposal, Mr. Joseph informed plaintiffs that their offer had been accepted. In order to assure themselves that a writing was in existence evidencing defendant's acceptance of their offer, plaintiffs insisted upon a written acceptance before they would execute the notes and trust deeds. In response to that request defendant's vice president prepared and signed a letter stating that the board of directors "approved your

bid," the word "bid" obviously refers to the deposit receipt as modified by the two letters. Although the trial court treated defendant's letter of acceptance as a counteroffer because it stated "This sale subject to the terms of our Escrow No. 63-3357," it might well have been deemed an unconditional acceptance of plaintiffs' offer, the escrow instructions being merely a means of carrying into execution the agreement thus reached. (*King* v. *Stanley, supra,* 32 Cal.2d 584; see *Wolf* v. *Price, supra.*) Treating the letter of acceptance as a counteroffer, however, the counteroffer was to sell the property to the plaintiffs upon the terms set forth in the deposit receipt as modified by the two letters upon the execution of the escrow instructions to which reference was made. It is apparent that the parties intended that the documents taken together constituted the agreement of sale. ▆ Where several writings relating to the same transaction are executed as parts of one transaction, they are to be taken together. (*Maier* v. *Paul X. Smith Corp., supra,* 205 Cal.App.2d 207, 218-220; Civ. Code, § 1642.)

Defendant's contention that the deposit receipt and the two letters may not be considered as part of the agreement because they were not signed by defendant, the party to be charged, is without merit. ▆ An agreement for the sale of real property does not have to be evidenced by a formal contract on a single document signed by all parties. A memorandum of agreement sufficient to meet the requirements of the statute of frauds may be evidenced by several writings such as an exchange of letters or telegrams, or in a writing from one party to the other acted upon by the other. (*King* v. *Stanley, supra; Karl* v. *JeBien,* 231 Cal.App.2d 769, 772 [42 Cal.Rptr. 461]; *Searles* v. *Gonzales,* 191 Cal. 426, 431 [216 P. 1003, 28 A.L.R. 78].)

Turning to the question of damages, counsels' report to the court, following the court's suggestion that they attempt to agree upon the amount of damages and after conferring with each other and their respective clients, that it may insert in the judgment the sum of $40,000 as damages can hardly be explained other than as a stipulation respecting the amount of damages, reserving to defendant the right to appeal on the issue of liability. ▆ But accepting the trial judge's evaluation of the occurrence that there was no stipulation, we find substantial evidence to support the award made. It is not the function of this court to reweigh the evidence or to pass on the credibility of the witnesses. ▆ If there is any substan-

tial evidence to support the trial court's finding, taking into account all inferences which the court might reasonably have drawn to support its determinations, its finding is conclusive. (*Overton* v. *Vita-food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757] ; *Walton* v. *Bank of California Nat. Assn.,* 218 Cal.App. 2d 527, 539 [32 Cal.Rptr. 856] ; *Bancroft-Whitney* v. *McHugh,* 166 Cal. 140, 142 [134 P. 1157].)　　The evidence shows a substantial loss of rental income by reason of the delay in the completion of the off-site improvements, expenditures by plaintiffs to make the buildings ready for occupancy, and considerable unfinished on-site work.

　　Defendant argues that the testimony of James Goodman respecting plaintiffs' expenditures on on-site work and his opinion as to the reasonable cost of completing them should have been excluded for lack of proper foundation. The contention is without merit. As to expenditures actually made, the record shows that the witness was testifying from his own personal knowledge. With respect to his opinion as to the reasonable cost of doing certain work necessary to complete the buildings he testified to his knowledge of the market value for such work and his extensive experience in buying, selling and improving real property.　　The qualification of a witness to testify as an expert is a matter resting in the sound discretion of the trial court, and where there is no showing of an abuse of discretion, its ruling will not be disturbed on appeal. (*Pfingsten* v. *Westenhaver,* 39 Cal.2d 12, 20 [244 P.2d 395] ; *Crooks* v. *Pirrone,* 228 Cal.App.2d 549, 553 [39 Cal. Rptr. 622].)　　The question of the degree of the witness's knowledge goes to the weight of the evidence rather than its admissibility. (*Pfingsten v. Westenhaver, supra.*) We find no abuse of discretion in the trial court's ruling admitting Mr. Goodman's testimony on damages.

　　The judgment is affirmed.

　　McCabe, P. J., and Kerrigan, J., concurred.