BENJAMIN ZERMENO, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zermeno v. Commissioner
Docket No. 961-90
United States Tax Court
T.C. Memo 1991-550; 1991 Tax Ct. Memo LEXIS 598; 62 T.C.M. (CCH) 1155; T.C.M. (RIA) 91550; November 4, 1991, Filed *598 Decision will be entered under Rule 155. Commencing in 1979, P made cash advances to his brother-in-law, M, for the purchase of a restaurant business. From 1980 through 1982, P advanced additional amounts to M for the purchase of the shopping center in which the restaurant was located and to support the restaurant operation. In 1984, P purchased the shopping center from M. In 1985, P sold the shopping center to a third party at a gain. In reporting the gain on the sale of the shopping center, P computed his basis in the property by including the amount listed as "total consideration" in escrow instructions executed by P and M, and adding thereto amounts M owed to P for prior cash advances. P also included in his basis computation amounts P paid to the holders of first and second mortgages on the property, amounts P paid to satisfy taxes owing on the property, and expenses P incurred in selling the property. R determined that P's basis in the property was limited to the amount set forth as "total consideration" in the escrow statement. Held, P failed to establish that amounts M owed to P for prior cash advances are properly included in his cost basis. Held further *599 , P has established that his cost basis in the property includes amounts he paid on the first and second mortgages. Held further, P is not entitled to a further increase of his basis for taxes paid with respect to the property. Held further, P is entitled to offset a portion of the gain realized on the sale of the property with selling expenses he incurred in the transaction. Held further, P is liable for the additions to tax set forth in sec. 6653(a)(1) and ( 2), I.R.C. Held further, P is liable for the addition to tax set forth in sec. 6661(a), I.R.C., if, following the computation under Rule 155, Tax Court Rules of Practice and Procedure, P's understatement of tax owing is found to be "substantial," as defined in sec. 6661(b), I.R.C.
Boyd D. Hudson and Robert B. Martin, Jr., for the petitioner. Mary Schewatz, for the respondent. BEGHE, Judge. BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax [1]
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661(a)
1985
$ 19,250
$ 963 *
$ 4,813
1986
26,452
1,323 **
6,613
*600 After concessions, the issues for decision are: (1) Whether petitioner correctly reported the gain realized on the sale of improved real property (which turns on whether petitioner properly computed his adjusted basis in the property); (2) whether petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986; and (3) whether petitioner is liable for additions to tax for substantial understatement of tax liability under section 6661(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein *601 by this reference. At the time of the filing of his petition, Benjamin Zermeno (petitioner) was a citizen and resident of Mexico, maintaining a mailing address at 2220 Delaney Drive, San Ysidro, California. Petitioner has been engaged in the business of renting billiard tables in Mexico for 28 years. In 1979, petitioner's brother-in-law, Jose Miranda (Miranda), asked petitioner for financial help in purchasing a restaurant business located in a small shopping center in Rosemeade, California. Petitioner orally agreed to advance Miranda the funds needed to acquire the business and to commence operations. Petitioner transferred funds to Miranda for these purposes as follows: Date
Amount
July 1979
$ 30,000.00
August 1979
20,000.00
September 1979
42,951.60
November 1979
10,000.00
$ 102,951.60
Petitioner considered the advances to be loans (rather than gifts) and expected to be repaid by Miranda. However, petitioner did not intend to charge Miranda interest on the loans. Miranda did not provide petitioner with any promissory notes for the advances nor did he execute a loan contract. Miranda purchased the restaurant business in 1979. The owner of the shopping center *602 charged Miranda a monthly rental of approximately $ 900 for the space used to operate the restaurant. Shortly after purchasing the restaurant, Miranda learned that the owner of the shopping center desired to sell the property. Miranda was interested in purchasing the property and again sought financial help from petitioner. After informally evaluating the property, petitioner orally agreed to advance funds to Miranda for his purchase of the property. On January 3, 1980, petitioner advanced Miranda $ 40,000. As before, petitioner considered the advance to be a loan and expected to be repaid by Miranda, although petitioner did not intend to charge Miranda interest. There is no promissory note or loan contract in the record reflecting the $ 40,000 advance. Miranda purchased the shopping center in January 1980 for $ 380,000. The price included a first trust deed loan in favor of Mary Elizabeth Stearns to which the property was subject (apparently in the amount of $ 302,000). On July 13, 1981, Miranda obtained a second mortgage on the shopping center through Topa Thrift and Loan Association. The record does not show the principal amount of the second mortgage. Subsequent to *603 Miranda's purchase of the shopping center, petitioner advanced Miranda additional funds to support the restaurant operation as follows: Date
Amount
May 1980
$ 10,000
August 1980
7,000
November 1980
10,000
March 1982
10,000
$ 37,000
Petitioner considered these advances to be loans and expected to be repaid by Miranda, without interest. There are no promissory notes or loan contracts in the record to reflect these advances. In the fall of 1983, Miranda was having difficulties meeting his obligations and faced the possibility of foreclosure on the shopping center property. At that time, Miranda and petitioner orally agreed that Miranda would transfer the property to petitioner in exchange for petitioner's promise to forgive a portion of Miranda's outstanding debts. On October 5, 1983, subsequent to petitioner's agreement to purchase the property but prior to the conveyance of the property, petitioner paid $ 36,537 to Topa Thrift and Loan Association to discharge Miranda's second mortgage on the property. Likewise, on October 7, 1983, petitioner paid $ 48,683.71 to Mary Elizabeth Stearns as an interest payment on the first trust deed loan to Miranda. The latter payment *604 was apparently made in response to Stearns' threats of foreclosure. Petitioner never reduced his various agreements with and transfers of funds to Miranda to written loan contracts or promissory notes because Miranda was a family member and petitioner deemed any such agreements and notes to be unnecessary. Petitioner purchased the shopping center from Miranda through an escrow account managed by Fortress Escrow Co., Inc. An early draft of the escrow instructions, executed on February 28, 1984, by both petitioner and Miranda, read as follows: Seller owes to buyer a personal note which is being used as part of the down payment in this escrow [plus] buyer is paying all the back taxes in the amount of $ 13,879.10 which is part also of the down payment. Buyer shall advise escrow the present unpaid balance of the note due him by seller.
Thus, contrary to the normal practice in which the buyer issues a promissory note to the seller in consideration for the transfer of property, petitioner and Miranda structured the transaction so that part of the consideration for the property would be satisfied by Miranda, the seller, issuing a note to petitioner, the buyer (reflecting amounts *605 Miranda owed petitioner). Additional escrow instructions, signed by petitioner and dated March 6, 1984, stated in pertinent part: To complete a total consideration of $ 382,000.00 buyer is assuming the existing 1st. trust deed loan of $ 302,000.00 and the balance of $ 80,000.00 is the amount seller owes buyer which includes the sum of $ 13,879.10 as back taxes and buyer shall deposit in escrow said sum of $ 13,879.10 to pay said taxes.
The next day, March 7, 1984, petitioner and Miranda executed additional escrow instructions which stated: TO FORTRESS ESCROW CO., INC.: It is hereby understood and agreed between the parties hereto that the existing 2nd. Trust deed loan of record will be shown of record when the Grant Deed records to Benjamin Zermeno. Sellers herein agree to pay said 2nd. Trust Deed Loan off outside of escrow and will obtain a Full Reconveyance to be recorded and will hand to Mr. Zermeno a copy of said Full Reconveyance showing property to be free and clear of said 2nd. Trust Deed loan and you as escrow holder are not to be concerned and are at no liability for the condition of title when the Grant Deed records.
Petitioner purchased the property *606 at a closing held on or about March 8, 1984. Shortly thereafter, on March 26, 1984, the escrow agent issued petitioner a final closing report and escrow statement. The escrow statement provided in pertinent part: MEMO Paid outside of Escrow
Cash through Escrow
8,000.00
Encumbrances of Record
302,000.00
Note
80,000.00
TOTAL CONSIDERATION
390,000.00
Enclosed with the final closing report was a check in the amount of $ 12,669.33. A review of the escrow statement reveals that the check served as a refund to petitioner of an original deposit of $ 14,185.10, less escrow expenses of $ 1,515.77. While the escrow statement listed $ 80,000 as the amount of the note, there is no "note" from Miranda to petitioner in the record. Further, there is no evidence that petitioner advised the escrow agent of a specific amount due him from Miranda in excess of the $ 80,000 "note" listed in the escrow statement. Petitioner and Miranda did not execute a written contract of sale for the sale of the shopping center property. On March 30, 1984, the grant deed by which Miranda conveyed the shopping center property to petitioner was officially recorded in Los Angeles County. The grant *607 deed contained a declaration by Miranda that the documentary transfer tax owing was $ 8.80. Miranda continued to own and operate the restaurant after petitioner purchased the shopping center. Petitioner increased Miranda's rent for the space used to operate the restaurant to $ 2,000 per month. In early 1985, the Treasurer and Tax Collector for Los Angeles County forwarded estimates of delinquent taxes for 1981, 1982, and 1983 to petitioner with respect to the shopping center property. On March 15, 1985, petitioner issued a check to the Tax Collector in the amount $ 19,564.35. In April 1985, Miranda filed a joint Federal income tax return with his wife for the taxable year 1984, reporting the sale price of the shopping center as $ 390,000. Miranda computed his adjusted basis in the property by reducing his $ 380,000 cost basis in the property by $ 30,400 for depreciation. As a result, Miranda reported a gain on the sale of the property of $ 40,400. Petitioner sold the shopping center in July 1985 for $ 800,000, with the purchaser apparently assuming the first trust deed loan in the then amount of $ 299,842. The purchaser paid for the property in two installments -- $ 236,201 *608 in 1985 and $ 263,957 in 1986. Petitioner incurred selling expenses of $ 61,242 on the transaction. By quitclaim deed recorded on September 4, 1985, Miranda transferred his interest in a residence located in Los Angeles County to petitioner. The quitclaim deed stated that the transaction was "a bonafide gift and the grantor received nothing in return, this is a family transfer." Miranda testified at trial that he transferred the property to petitioner to avoid foreclosure and that petitioner paid $ 15,000 to satisfy a lien against the property. There is no evidence in the record of the value of the residence. Petitioner hired an accountant, Ruth Wahl, to prepare his Federal income tax returns for the taxable years 1985 and 1986. Petitioner supplied Wahl the information necessary to complete his returns, including the information necessary to compute the gain realized on the sale of the shopping center property. Wahl did not request documentation from petitioner to verify that the information he provided her was correct. In September 1985, petitioner attempted to file a U.S. Nonresident Alien Income Tax Return (Form 1040NR) for the taxable year 1985. However, the Internal *609 Revenue Service declined to accept the return for filing on the grounds that it was premature and advised petitioner to file the return after December 31, 1985. Accordingly, petitioner filed a second income tax return for the taxable year 1985 in the spring of 1986. Relying on petitioner's handwritten notes, Wahl reported petitioner's gain from the sale of the shopping center property using the installment method. Wahl computed petitioner's basis in the property as follows: Original cost
$ 390,000
Amounts advanced to Miranda
107,951
Amount paid to Topa Thrift & Loan
36,537
Amount paid to Mary Elizabeth Stearns
48,684
$ 583,172 [2]
Next, Wahl computed petitioner's adjusted basis in the property by reducing petitioner's *610 cost basis by $ 24,180 for depreciation. Thus, petitioner's adjusted basis was reported as $ 558,992. Finally, in computing petitioner's gain on the sale of the property, Wahl added $ 61,242 to petitioner's adjusted basis for commissions and other expenses incurred by petitioner in selling the property. The resulting figure, $ 620,234, was subtracted from the contract price of $ 800,000 to arrive at a gross profit of $ 179,766. Employing the installment method, petitioner reported a long-term capital gain of $ 33,958 for the taxable year 1985. Petitioner also reported an operating loss of $ 8,667 from the operation and rental of the shopping center units for 1985. In computing this loss, petitioner claimed a deduction of $ 22,137 for real estate and personal property taxes paid during 1985. In February 1987, petitioner filed an amended return for the taxable year 1985, reducing by $ 33,954 the amount of interest income reported in his return as filed. Specifically, the amended return stated: The amount on line #9 show [sic] interest earned from Bank of America, a U.S. banking institution. This was erroneously listed as income. Since this was NOT earned in a trade or business, *611 it is exempt from U.S. income tax.
The form #6251 has been recalculated and attached. In April 1987, petitioner filed a U.S. Nonresident Alien Income Tax Return for the taxable year 1986. Based on the same installment sale computations used in preparing his 1985 return, petitioner reported a long-term capital gain of $ 37,948 with respect to the sale of the shopping center property. Further, petitioner claimed that interest of $ 34,990 earned on deposits he maintained with the Bank of America was exempt from income tax. By statutory notice dated October 16, 1989, respondent determined deficiencies in and additions to petitioner's Federal income tax for the taxable years 1985 and 1986. Specifically, the notice of deficiency states in pertinent part: 1a. Interest Income
It has been determined that you received interest income of $ 20,612.00 for 1985 and $ 3,407.00 for 1986 which is effectively connected with U.S. trade or business, which was not reported on your 1985 and 1986 Form 1040NR. Therefore, your taxable income is being increased by $ 20,162.00 for 1985 and $ 3,407.00 for 1986. 1b. Capital Gain
The capital gains you reported on your 1985 and *612 1986 Form 1040NR have been adjusted to reflect the proper adjusted basis of $ 351,941.00. Therefore, your taxable income is being increased by $ 39,351.00 for 1985 and $ 43,699.00 for 1986. 1c. Schedule A Taxes
You reported $ 2,904.00 on your 1986 Form 1040NR relating to sales taxes and license fees. Since you are a non-resident alien, only state and local income taxes are deductible. Therefore, your income for 1986 is being increased by $ 2,904.00. 1d. Schedule E Travel Expense
You failed to provide substantiation for travel expenses deducted on your 1986 Form 1040NR, in the amount of $ 3,386.00 for 1986. Therefore, your income is being increased by $ 3,386 for 1986. 1e. Schedule E Taxes
You deducted an amount of $ 22,137.00 on your 1985 Form 1040NR, of which $ 13,879.00 represented back taxes due from the previous owner of the property. Since you were not legally liable for this expense, you may not deduct it and your income for 1985 is being increased by $ 13,879.00.
Respondent further determined that petitioner was liable for the additions to tax specified above. Petitioner subsequently conceded the adjustments in paragraphs 1a, 1c, *613 and 1e of the deficiency notice, as listed above. With respect to the travel expense adjustment listed in paragraph 1d, respondent conceded $ 1,664 while petitioner conceded $ 1,722. On brief, respondent concedes that the amount of $ 351,941 listed in paragraph 1b as petitioner's adjusted basis in the shopping center property is in error. Respondent now contends that petitioner's adjusted basis in the property is $ 365,820. Respondent maintains that petitioner's adjusted basis is properly computed by subtracting $ 24,180 for depreciation from $ 390,000 representing petitioner's cost basis. The issues remaining in dispute are whether petitioner correctly reported his gain on the sale of the shopping center property (which turns on whether petitioner properly computed his adjusted basis in the property), and whether petitioner is liable for the additions to tax provided in sections 6653(a) (1) and (2) and 6661(a). OPINION Section 1001(a) sets forth the rule for computing gain or loss from the sale or other disposition of property and provides:
(a) COMPUTATION OF GAIN OR LOSS. -- The gain from the sale or other disposition of property shall be the excess of the amount realized *614 therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.
There is no dispute that the amount realized by petitioner on the sale of the shopping center property was $ 800,000. Sec. 1001(b). Nor is there any doubt that petitioner realized and recognized a gain on the transaction. Sec. 1001(c). The dispute concerns the amount of petitioner's adjusted basis in the property when he sold it and his resulting gain realized. Adjusted basis for determining gain or loss from the sale or other disposition of property generally is determined pursuant to sections 1012 (defining basis of property) and 1016 (defining adjustments to basis). Sec. 1011(a). In this regard, section 1012 provides in pertinent part:
The basis of property shall be the cost of such property, * * *. The cost of real property shall not include any amount in respect of real property taxes which are treated under section 164(d) as imposed on the taxpayer.
Section 1016 provides in pertinent part: (a) GENERAL RULE. -- Proper adjustment in respect of the property *615 shall in all cases be made-- (1) for expenditures, receipts, losses or other items, properly chargeable to capital account, * * *
Accordingly, the dispute before us requires that we first determine petitioner's original cost basis in the shopping center property, and then determine whether petitioner is entitled to adjustments to his basis under section 1016. In addition, we must consider whether petitioner incurred selling expenses that reduce his gross profit on the transaction. We note at the outset that the parties did not give the Court a meaningful stipulation of the pertinent facts. Moreover, although the parties ask us to determine petitioner's gain realized on the sale of the shopping center property, the figures offered by petitioner to support his position do not present a coherent picture of the transaction. A specific problem with the record is that there appears to be an overlap between the reference in the escrow instructions to "the balance of $ 80,000 * * * the amount seller owes buyer which includes the sum of $ 13,879.10 as back taxes," which respondent does not dispute as an addition to petitioner's basis, and the total of the additional amounts petitioner *616 is claiming as basis adjustments in this proceeding. With the exception of the $ 13,879 of back taxes, there is no indication which, if any, of petitioner's advances and other payments were included in the $ 80,000 "note." [3]
A. Gain on sale of shopping center property
On brief, petitioner contends that, despite the lack of any writings memorializing his agreements with Miranda, his basis in the shopping center property includes the following items: Description
Amount
First trust deed assumed
$ 302,000
Escrow costs on purchase
1,516
Interest paid on first trust deed
48,684
Payment of second mortgage
36,537
Payment of back taxes
19,564
Forgiveness of advances to Miranda
used to acquire restaurant business
102,951
Forgiveness of advances to Miranda
used to acquire property
40,000
Forgiveness of advances to Miranda
used to operate restaurant
37,000
Expenses on sale of property
61,242
$ 649,494
Less depreciation allowed
(24,180)
$ 625,314
*617 Petitioner contends that because he used a figure of $ 620,234 to compute his gains on the tax returns in question, he actually understated his adjusted basis by $ 5,080. Respondent maintains that petitioner has failed to establish that his basis in the property was other than the amount of total consideration listed in the escrow statement. Thus, respondent contends that petitioner's basis is limited to $ 390,000. 1. Cost basis
In attempting to determine petitioner's cost basis in the property, we note that petitioner has not come forth with definitive evidence, such as a written contract of sale, to establish the price he paid for the property. The dearth of evidence on this point arises from petitioner's practice not to reduce his agreements with Miranda to writing. The various drafts of escrow instructions and the escrow statement are the only contemporaneous writings pertinent to the question of the consideration petitioner paid for the shopping center property. The final escrow statement states the total purchase price to be $ 390,000. In addition to the escrow statement, we have the testimony of petitioner and Miranda that the terms of the escrow statement did *618 not reflect their entire agreement and that additional consideration beyond $ 390,000 was intended as part of the transaction. While it is clear petitioner bears the burden of proof with respect to the question of his basis in the shopping center property, see Rule 142(a), respondent raises an issue regarding the nature of petitioner's burden. In particular, respondent argues that the normal preponderance of the evidence standard should not apply because petitioner is challenging the tax consequences otherwise flowing from the escrow instructions and the escrow statement. Respondent, relying on Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), contends that petitioner may only offer proof which, in an action between contracting parties, would be admissible to alter the purport of the written contract because of mistake, undue influence, fraud, duress, or the like. In the alternative, respondent contends that petitioner must meet a "strong proof" standard, i.e., proof by more than a preponderance of the evidence, that the terms of the escrow instructions did not fully reflect his agreement with Miranda. See Elrod v. Commissioner, 87 T.C. 1046, 1066 (1986); *619 G C Services Corp. v. Commissioner, 73 T.C. 406, 412 (1979). Petitioner contends that neither the Danielson rule nor the strong proof rule applies in this case because escrow instructions do not have the effect of a contract under California State law. See Wolf v. Price, 244 Cal. App. 2d 165, 171; 52 Cal. Rptr. 889, 893 (1966). Petitioner argues that he is free to establish the terms of his agreement with Miranda through extrinsic evidence. We agree with petitioner that the Danielson rule is inapplicable. [4] In short, the terms of the various escrow instructions do not reflect that petitioner and Miranda arrived at a final agreement as to the price to be paid for the property. Moreover, other than the escrow instructions drafted in February 1984, there are no documents in the record, signed by both petitioner and Miranda, reflecting an agreement as to the price to be paid for the property. Therefore, we likewise decline to apply the strong proof rule. *620 On the other hand, we are not prepared to ignore the escrow instructions and the escrow statement. To the contrary, in the absence of any other documents in the record bearing on petitioner's cost basis in the property, we believe that the escrow instructions and statement merit careful attention. On a review of the entire record, we conclude that petitioner's cost basis in the property was $ 476,737. This amount includes the $ 390,000 listed as consideration in the escrow statement, $ 85,221 reflecting amounts petitioner paid on the first trust deed loan and the second mortgage, plus $ 1,516 for miscellaneous escrow expenses petitioner incurred in purchasing the property. We reject petitioner's contention that his cash advances to Miranda (in excess of amounts included in the $ 80,000 "note" mentioned in the escrow statement) are includable in the total consideration paid by petitioner for the shopping center property. In support of these conclusions, we begin with the escrow instructions, which reveal that petitioner and Miranda intended that a portion of Miranda's debt to petitioner would be used by petitioner as part of the consideration for the transfer of the property. *621 Notably, the escrow instructions provide that a total consideration of $ 390,000 would be paid for the property, including $ 8,000 in cash, $ 302,000 through petitioner's assumption of the first mortgage, and $ 80,000 reflecting amounts Miranda owed petitioner. Contrary to the specific terms of the escrow instructions, we have the testimony of petitioner and Miranda that they intended to incorporate Miranda's entire debt to petitioner, including all cash advances made from 1979 through 1982, in the consideration for the transfer of the property. We are not convinced that petitioner and Miranda arrived at such an agreement. Most importantly, Miranda's testimony conflicts with his reporting position as set forth in his Federal income tax return for the taxable year 1984. In computing his gain on the sale of the property, Miranda reported a gross sale price for the property of $ 390,000. We observe that the lower sale price reported on Miranda's return, in contrast to Miranda's current testimony inflating the sale price, allowed Miranda to minimize the taxable gain reported on the sale. Now, after the normal statutory period of limitations has apparently expired on Miranda's 1984 *622 taxable year, Miranda asserts that he erred (in his own favor) in reporting the transaction and that petitioner is entitled to the tax benefits of a higher cost basis in the property. We further note the possibility that petitioner undertook to recoup the balance of his advances to Miranda by other means than the transfer of the shopping center property. In particular, after purchasing the shopping center property, petitioner increased Miranda's rent for the restaurant over 100 percent, to $ 2,000 per month. We are inclined to believe that the rental of $ 900 per month that Miranda paid to the former owner of the property probably represented a reasonable rental and that the payments to petitioner in excess of that amount may be something else paid in the guise of rent. In addition, neither petitioner nor Miranda was able effectively to explain Miranda's transfer of a residence (characterized as a bona fide gift) to petitioner. Under the circumstances, we believe that these were two means through which petitioner was recouping some portion of his prior advances from Miranda. [5]
*623 In contrast to the treatment of the cash advances, we conclude that petitioner is entitled to adjust his cost basis in the property to reflect the payments made on the first trust deed loan and the second mortgage. In regard to these two items, we believe that there is inherent plausibility to petitioner's contentions that these amounts should be treated qas part of the consideration for the purchase of the property. At the time that petitioner made these payments in early October 1983, he had already orally agreed with Miranda to purchase the property. In these circumstances, and with apparent threats of foreclosure, petitioner felt compelled to make the payments in order to preserve his putative interest in the property. The nature, purpose, and effect of these payments and their nexus with the property leads us to conclude that they should be incorporated in petitioner's cost. The fact that petitioner made these payments before taking title rather than thereafter does not in our view change their character as costs incurred in acquiring the property. Sec. 1012; see Koehler v. Commissioner, T.C. Memo 1978-381, and cases cited therein. While we recognize *624 that Miranda's inconsistent reporting position introduces an element of whipsaw against the Commissioner, at least to the extent we allow petitioner's payment of the second mortgage to be included in his basis, [6] we find the evidence presented sufficient to support petitioner's position. [7] Accordingly, we hold that the amounts paid on the first trust deed loan and the second mortgage are properly added to petitioner's basis. *625 2. Adjusted basis
Petitioner contends that he is entitled to an adjustment to his cost basis reflecting the $ 19,654.35 he paid in 1985 as back taxes on the property. As a preliminary matter, we note that petitioner originally claimed a deduction of $ 22,137 for real estate and personal property taxes on his return for the taxable year 1985. (Absent an explanation by petitioner to the contrary, we presume that the $ 19,654.35 amount petitioner now claims was included in the deduction as claimed on the return.) As previously indicated, respondent disallowed $ 13,879 of the claimed $ 22,137 deduction, asserting that petitioner was precluded from deducting back taxes that were Miranda's responsibility as the equitable owner of the property. Petitioner conceded this determination. Thus, to the extent petitioner was allowed a deduction for a portion of the claimed deduction, a basis adjustment, if one is appropriate, is properly limited to the $ 13,879 disallowed amount. Presumably, respondent's determination to disallow the $ 13,879 portion of the deduction for taxes was based on the following language contained in the escrow instructions: To complete a total consideration *626 of $ 382,000.00 buyer is assuming the existing 1st. trust deed loan of $ 302,000.00 and the balance of $ 80,000.00 is the amount seller owes buyer which includes the sum of $ 13,879.10 as back taxes and buyer shall deposit in escrow said sum of $ 13,879.10 to pay said taxes.
Because the escrow instructions expressly state that back taxes of $ 13,879 are included in the $ 80,000 amount already taken into consideration in computing petitioner's basis, we agree with respondent that petitioner is not entitled to a further basis increase for back taxes. Petitioner has not shown that his adjusted basis exceeded $ 452,557, and we hold that is the amount of his adjusted basis. [8]
3. Selling expenses
Finally, petitioner contends that he is entitled to reduce the gain realized on the sale by $ 61,242, representing expenses he incurred in selling the property. *627 Petitioner introduced sufficient evidence at trial to support this contention. Respondent has not addressed this issue, and we deem respondent to have conceded it. B. Additions to tax
1. Negligence
Sections 6653(a)(1) for 1985 and 6653(a)(1)(A) for 1986 impose a 5-percent addition to tax on any underpayment of tax due to negligence or intentional disregard of rules and regulations. Additionally, sections 6653(a)(2) and 6653(a)(1)(B) provide for an addition to tax in an amount equal to 50 percent of the interest due on that portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination of negligence is presumed to be correct, and petitioner bears the burden of proving otherwise. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. a Memorandum Opinion of this Court; Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner contends *628 that he relied on his accountant, Ruth Wahl, to properly complete his income tax returns and therefore he was not negligent. While reliance on the advice of a tax professional may preclude a finding of negligence in some circumstances, see Otis v. Commissioner, 73 T.C. 671, 675 (1980), we do not agree that petitioner relied on a tax professional in the present case. From Wahl's testimony it is evident that she relied on the information provided by petitioner to prepare his returns. Wahl did not attempt to verify the information provided by petitioner and instead merely prepared the returns consistently with petitioner's directions. Under the circumstances, petitioner's claimed reliance on tax advice will not insulate petitioner from the negligence additions. See Perrett v. Commissioner, 74 T.C. 111, 134-135 (1980), affd. without published opinion 679 F.2d 900 (9th Cir. 1982); Enoch v. Commissioner, 57 T.C. 781, 802-803 (1972). Accordingly, we sustain the additions to tax for negligence. 2. Substantial understatement
Section 6661(a) imposes an addition to tax of 25 percent of the amount of any *629 underpayment of income tax attributable to a substantial understatement. See Pallottini v. Commissioner, 90 T.C. 498 (1988). A substantial understatement occurs where the amount of the understatement exceeds the greater of 10 percent of the correct tax liability or $ 5,000. Sec. 6661(b). If an item is not attributable to a tax shelter, the amount of the understatement is reduced for section 6661 purposes by the portion of the understatement that is attributable to the taxpayer's reporting of the item, provided that relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii) and (C). Section 6661(b)(2)(B) contemplates that the taxpayer will disclose the pertinent facts underlying his reporting position. We have held that this provision requires that the taxpayer include sufficient information on the return to enable respondent to identify the potential controversy involved. See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987) (merely listing on Schedule F and Form 4562 the amount of farm income and expenses and depreciation claimed, without *630 more, is not sufficient to satisfy section 6661(b)(2)(B)). Petitioner argues that he is not liable for the addition to tax under section 6661(a) because he adequately disclosed all disputed items, including his basis in the shopping center property and interest received from Bank of America, in his returns. We note that respondent concedes that petitioner adequately disclosed Schedule A taxes in the amount of $ 2,924 for the taxable year 1986. Thus, the amount of petitioner's underpayment for purposes of section 6661(a) is reduced by such amount. Similarly, we conclude that petitioner adequately disclosed his position regarding interest payments received from the Bank of America during 1985 and 1986 so that those amounts are not included in the underpayment computation for purposes of section 6661(a). Specifically, in filing his amended return for the taxable year 1985, and his original return for the taxable year 1986, petitioner disclosed his position that the interest was not taxable income because it was not effectively connected with a trade or business. The balance of the items listed on petitioner's returns, however, were not sufficient to enable respondent to identify *631 the potential controversies involved herein. Schirmer v. Commissioner, supra. Thus, there was an understatement for purposes of section 6661(a) during each of the years in issue. In light of petitioner's concessions and our resolution of the issues concerning petitioner's adjusted basis in the shopping center property, it is clear that petitioner understated the income taxes due for the years in issue. Accordingly, if the Rule 155 computation shows that petitioner's understatements are "substantial" as defined in section 6661(b)(1)(A), the additions to tax under section 6661(a) are sustained. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. For the taxable year 1986, the additions to tax for negligence are codified under sec. 6653(a)(1)(A) and (B). (Section references are to the Internal Revenue Code as amended and in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure.) * 50 percent of the interest due on $ 19,250. ** 50 percent of the interest due on $ 26,452.↩
2. Consistent with petitioner's notes, Wahl included an amount of $ 107,951 for advances to Miranda. It is unclear how petitioner arrived at this amount, although it apparently has some relation to the $ 102,951 petitioner originally advanced to Miranda to acquire the restaurant business.↩
3. Based on Wahl's computations of petitioner's gain on the sale (supra↩ p 10), there is at least one possible explanation as to the $ 80,000 "note." Specifically, while Wahl's computations include a reference to cash advances of $ 107,951 (which are not adequately explained), there is no reference to the several cash advances (totaling $ 77,000) made after Miranda acquired the restaurant business. On the record presented, we are left to guess whether these advances are included, along with the back taxes of $ 13,879, as part of the $ 80,000 "note."
4. Even if Commissioner v. Danielson, 378 F.2d 771 (3d Cir. 1967), could be applied under the facts, we have repeatedly held that we will not follow that rule unless we are required to do so under the rule in Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). See Anderson v. Commissioner, 92 T.C. 138, 171 (1989), and cases therein cited; Franks v. Commissioner, T.C. Memo 1988-245. Because petitioner is a nonresident alien, it appears that venue for purposes of an appeal would lie in the Court of Appeals for the District of Columbia. Sec. 7482(b) (flush language). In any event, because that court does not appear to have adopted the Danielson↩ rule, we would not be obligated to apply it in this case.
5. Miranda's testimony also conflicts with his declaration in the grant deed conveying the property to petitioner made for purposes of computing the California transfer tax. Under California law, the transfer tax in question is computed based on full value, less encumbrances remaining at the time of sale, at a rate of 55 cents for each five hundred dollars of value. Cal. Rev. & Tax. Code sec. 11911 (West 1970). Miranda declared $ 8.80 as the documentary transfer tax due on the transaction. Presumably, Miranda considered the full value received to be the $ 8,000 cash amount listed in the escrow instructions and computed the documentary transfer tax as follows: $ 8,000 / 500 X .55 = $ 8.80↩
6. The escrow instruction executed on March 7, 1984, is not inconsistent with our decision that the payment on the second mortgage is includable in petitioner's basis. Although the instruction is somewhat ambiguous, it seems that the instruction was added at a late hour (the day before settlement) as a mere formality to satisfy the escrow agent. In addition, the instruction reinforces our conclusion that the amount paid on the second mortgage was contemplated as part of the overall transaction.↩
7. We note that petitioner's payment of the interest on the Stearns first trust deed loan, although properly includable in Miranda's amount realized on the sale of the property, would also entitle Miranda to an offsetting deduction under sec. 163(a) for interest paid. See Cooledge v. Commissioner, 40 B.T.A. 1325 (1939); see also Commercial Security Bank v. Commissioner, 77 T.C. 145, 149↩ (1981). As a result, there is no whipsaw of respondent in allowing this item as an element of petitioner's basis for the property.
8. We arrive at the adjusted basis of $ 452,557 by subtracting $ 24,180 for depreciation (as conceded by respondent) from petitioner's cost basis of $ 476,737.↩