[No. C042074. Third Dist. Nov. 5, 2003.]

HOUSE OF PRAYER: RENEWAL AND HEALING CENTER OF YUBA
CITY et al., Plaintiffs and Respondents, v.
EVANGELICAL ASSOCIATION FOR INDIA et al., Defendants and
Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*The Reporter of Decision is directed to publish the opinion except for Part II of the
Discussion.

**COUNSEL**

Robert E. McCann for Defendants and Appellants.

Bruce Hudson Towne for Plaintiffs and Respondents.

**OPINION**

**BLEASE, Acting P. J.**—Defendants Evangelical Association for India (EAI) and Jit Pegany appeal from a judgment rendered by the trial court in favor of plaintiffs House of Prayer: Renewal and Healing Center of Yuba City and Om

Pegany. Defendants claim the trial court erred in granting the specific enforcement of a contract to transfer church property because the agreement violated the statute of frauds and lacked sufficient consideration.

We disagree and shall affirm the judgment.

In the published portion of the opinion we hold that the time of performance of an act required for the sale of property subject to the statute of frauds may be implied pursuant to Civil Code section 1657.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant Jit Pegany[2] founded EAI in 1975. He is the president and chairman of the board of EAI. EAI began with one church in Phoenix, and over the years has branched out to California, India, England, and Canada.

Om Pegany is Jit's nephew. Om was licensed to preach by EAI in December 1990. With Jit's help, Om started the House of Prayer church in 1991. He was later ordained by EAI in 1997.

House of Prayer purchased a shopping center on Garden Highway for use as their church building. The property was purchased for approximately $250,000, and the deed was placed in the name of Om and his wife. The property was later refinanced in the amount of approximately $350,000 to pay for remodeling.

In late 1996 or early 1997, the church property was deeded to EAI in order to take advantage of EAI's tax-exempt status. Om and his wife and two other House of Prayer members remained guarantors on the loan.

Beginning in late 2000, a number of disputes developed between Om and Jit regarding church matters. On January 9, 2001, Jit presented Om with a letter containing three options. The letter read:

"After careful and prayerful consideration, the Board of Evangelistic Association for India is submitting the enclosed 3 options for your review. Our Board members feel that only by taking the measures outlined in option 1, that our church may again be united as the Lord would want. If option 1 is not agreeable to you, then we feel our only option is to revoke your License and allow you to go on your own with either option 2 or 3.

---

[1] The Reporter of Decision is directed to publish the opinion except for part II of the Discussion.

[2] Since plaintiff and defendant have the same last name, we shall refer to them by their first names.

"It is with great disappointment and heartbreak that we feel this action must be taken. It is our responsibility as Board Members to supervise and correct those who are ordained under our covering.

"The EAI Board members encourage you to prayerfully decide which option you will take. A decision must be submitted to us in writing by Saturday, January 13, 2001, by 5:00 p.m. The EAI Board members will make an announcement regarding the future of the church on Sunday, January 14, 2001 at 10:00 a.m."

The three options that followed were each initialed by Jit. The first option allowed Om to remain pastor of the House of Prayer under Jit's leadership. It specified the church property would belong to EAI and would remain in EAI's name.

The second option provided as follows:

"EAI will sever all ties to the Church.

"All funds contributed by EAI or Jit Pegany since 1993, in the amount of $585,886.00, will be considered a donation to the Church, with no further obligation.

"Om or other party will re-finance current mortgage of the Church property.

"Ordination Certificates and Licenses issued by EAI to Om will be immediately revoked.

"House of Prayer checking account will be closed and funds will be given to new account."

Jit acknowledged his intent in making the offer was to give Om the church, and to transfer the property to Om.

The third option provided Om would sever his ties with the House of Prayer, and his EAI ordination and license would be revoked. The church property would remain in EAI's name and EAI would continue the operation of the church with any members who chose not to follow Om.

Om sent a letter to Jit dated January 13, 2001, accepting the second option. Om signed the letter and initialed option 2.

Three days later Jit sent Om a letter purporting to accept his acceptance. The letter stated Om had 45 days (until February 28) to refinance the existing mortgage and close the checking account. The letter stated the agreement would be terminated if the new mortgage was not obtained within this time. The day after the letter was written, Om had the locks changed on the property.

Om wrote back to Jit complaining about the 45-day time limit. Jit replied that the parties had not agreed on a time limit for refinancing because Jit was donating the property to House of Prayer, and if the financing was not in place by February 28, 2001, no extra time would be given.

Jit and Om continued to have disputes relating to church business. On February 1, 2001, EAI's attorney sent a letter to Om claiming Om had breached his obligations under the agreement by failing to close the checking account and failing to refinance the mortgage. The letter demanded Om turn over the keys and security system code. Three days later Jit posted a notice on the church entrance stating Om was no longer pastor of the church, nor was he to be permitted to enter the premises.

On February 9, 2001, Gold Country Lenders notified the attorney for House of Prayer that it had approved a loan for the property, conditioned on a grant deed from Jit.

On February 21, 2001, Jit's attorney advised House of Prayer's counsel that option 2 was no longer available. The letter asserted Om had repudiated the option when he had the locks changed on the church on January 17.

Plaintiffs filed a complaint for injunctive relief, specific performance of the agreement to transfer the church property, libel, slander, intentional interference with economic relationship, negligent and intentional misrepresentation, intentional suppression of fact, breach of contract, and wrongful eviction.

The trial court ruled in plaintiffs' favor on the injunctive relief and specific performance causes of action, but ruled in defendants' favor on the remaining causes of action. Only the specific performance cause of action is at issue in this appeal.

I

Statute of Frauds

Defendants argue the statute of frauds prevents the agreement from being specifically enforced because the agreement contained no time of performance. We disagree.

Civil Code section 1624 provides in pertinent part that an agreement for the sale of real property is invalid unless it, "or some note or memorandum thereof, [is] in writing and subscribed by the party to be charged or by the party's agent." ▮ The writing must contain the essential elements of the agreement. (Rest.2d Contracts, § 131, com. g, p. 338; *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.* (1984) 36 Cal.3d 752, 762–763 [206 Cal.Rptr. 354, 686 P.2d 1158] [overruled on another point in *Freeman & Mills, Inc. v. Belcher Oil Co.* (1995) 11 Cal.4th 85 [44 Cal.Rptr.2d 420, 900 P.2d 669].) What is essential depends on the circumstances of the agreement, including the agreement and its context, the subsequent conduct of the parties, and the remedy sought. (Rest.2d Contracts, § 131.)

Citing *Breckinridge v. Crocker* (1889) 78 Cal. 529, 535 [21 P. 179], defendants assert one of the material elements of a contract for the sale of land is the time of performance. Defendants argue the written agreement before the court contained no time for plaintiffs to refinance the property. Defendants reason that since time of performance is a material term, and it is missing from the written agreement, the agreement is unenforceable.

In *Breckinridge v. Crocker, supra,* the court stated: "In order to take a contract for the sale of land out of the statute of frauds, it is not necessary that there be a formal contract, drawn up with technical exactness. A memorandum of the agreement is sufficient . . . . But the memorandum must contain all the material elements of the contract; that is, it must show who is the seller and who is the buyer, what the price is and *when it is to be paid,* and must so describe the land that it can be identified." (78 Cal. at pp. 534–536, italics added.) Unlike the agreement before us, the writings in *Breckinridge v. Crocker,* set forth the time for payment of the purchase price of the property (i.e., "five thousand on Tuesday next; balance in thirty days."). (*Id.* at p. 533.) The court held the writings were insufficient to take the agreement out of the statute of frauds because they did not disclose the buyer of the property and did not describe the property to be purchased. (*Id.* at pp. 536–538.) Accordingly, the court's statements regarding the time of payment were dicta.

Defendants have cited no case, and we are aware of no case, that concludes an agreement to sell real property is invalid because the written agreement, sufficient in every other respect, omits the time of payment. It is often stated, as it was in *Breckinridge v. Crocker,* that the time of payment is an essential term of a contract for the sale of real property. (See e.g., 35 pt. 1 Cal.Jur.3d (1988) Frauds, Statute of, § 71, p. 99; *O'Donnell v. Lutter* (1945) 68 Cal.App.2d 376, 381 [156 P.2d 958]; *Fara v. Wells* (1957) 156 Cal.App.2d 322, 327–328 [319 P.2d 394]; *King v. Stanley* (1948) 32 Cal.2d 584, 589 [197 P.2d 321]; *Roller v. California Pacific Title Ins. Co.*

(1949) 92 Cal.App.2d 149, 156 [206 P.2d 694].) However, in none of these cases was the absence of a term specifying the time of performance an issue. Accordingly, the statements are dicta, and secondary sources relying on such cases are not controlling here.

Instead, Civil Code section 1657 provides in pertinent part, " [i]f no time is specified for the performance of an act required to be performed, a reasonable time is allowed." ▮ Pursuant to Civil Code section 1657, courts of this state have consistently held a contract for the sale of real estate is not unenforceable for failure to specify a time of performance, because the law implies a reasonable time. (*Copple v. Aigeltinger* (1914) 167 Cal. 706, 709 [140 P. 1073]; *San Francisco Hotel Co. v. Baior* (1961) 189 Cal.App.2d 206, 213 [11 Cal.Rptr. 32] [disapproved on other grounds in *Ellis v. Mihelis* (1963) 60 Cal.2d 206, 216 [32 Cal.Rptr. 415, 384 P.2d 7]]; *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 838 [217 Cal.Rptr. 856].)

Accordingly, the trial court did not err in concluding time of performance was not an essential term of this agreement based on the agreement and its context. We imply a reasonable time for performance of the agreement, and with the implied term, the agreement is enforceable.

## II

### Adequate Consideration*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Morrison, J., and Robie, J., concurred.

A petition for a rehearing was denied December 5, 2003.

---

*See footnote, *ante*, page 48.