[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 375 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 376 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 377 
OPINION
Plaintiff Sunil Patel (Patel) sued defendants Morris Liebermensch, Zita Liebermensch and the Liebermensch Family Partnership, L.P. (Liebermensch), to allege entitlement to specific performance of an option contract for plaintiff to purchase from defendants and for defendants to sell to plaintiff certain residential property, which plaintiff was leasing from defendants. (Civ. Code, § 3390; all further statutory references are to the Civil Code unless otherwise indicated.) Patel alleged that he exercised the option contract, entered into at the same time as his lease, in a manner that was within the terms of the option, and that the terms of the option contract to buy the property were sufficiently certain to be enforced. In response, Liebermensch filed an unlawful detainer complaint that the trial court consolidated (later dismissed). (Liebermensch v. Patel (Super.Ct. San Diego County, 2004, No. UC315333) (the unlawful detainer action).) Liebermensch argued no meeting of the minds ever occurred, or the option had expired upon Patel's requests for different terms of sale, and in any case, it was not exercised according to its terms.
 In pretrial proceedings, a demurrer was overruled. After jury trial and a special verdict finding that there was an option contract with terms sufficiently clear to enable the parties to carry out the objective of the contract, judgment was entered ordering specific performance in favor of Patel, to conduct a sale on terms provided by the court.
 Liebermensch appeals, contending the trial court incorrectly interpreted the option contract and the dealings of the parties, in light of his arguments that (1) the written option did not contain the minimum terms required for creating an enforceable option agreement; (2) the parties never agreed to certain substantial and important missing terms of the written option, regarding time and manner of payment; and (3) there is no substantial evidence to support the special verdict that Patel signed the written option in accordance with its express terms. Liebermensch continues to seek resolution of his unlawful detainer complaint.
 We reverse the judgment ordering specific performance, finding that even if the special verdict is considered as properly resolving preliminary factual questions about the transactional facts regarding the parties' signing of the documents, the trial court nevertheless incorrectly construed the contract as containing all the essential terms, and the court therefore lacked any sufficient basis to order specific performance. Accordingly, the judgment will be reversed with directions to enter a different judgment for defendants in this matter, after the trial court has conducted any necessary further proceedings to resolve the consolidated unlawful detainer issues. *Page 379 
 FACTUAL AND PROCEDURAL BACKGROUND A Lease, Complaint, Cross-action In July 2003, on behalf of his family trust, Liebermensch agreed to rent his condo unit on Navajo Road (the Property) to Patel and his wife. Liebermensch drafted the following proposal, which was faxed to Patel, and the parties agreed that an option to renew the lease up until August 2005 could be added, as follows: "We propose to rent our condominium at 7255 Navajo Road, Apt. #370, San Diego, CA 92119 at a monthly rate of $1,400.00 starting August 7, 2003 for one year ending August 6, 2004; with a security deposit of $1,200.00, and the following option to buy [with option to renew lease up to August 2005]. [¶] Through the end of the year 2003, the selling price is $290,000. The selling price increases by 3% through the end of the year 2004 and cancels with expiration of your occupancy. Should the option to buy be exercised, $1,200.00 shall be refunded to you. [¶] Please indicate your acceptance by signing below and returning to me at the above referenced fax."
 The parties exchanged several suggestions for additions to this document (the "option contract"). Meanwhile, Liebermensch prepared a draft rental agreement. The rental agreement (long form lease) has a handwritten paragraph 23 providing, "option to buy is attached." In Patel's amendment to the complaint, he describes how these documents were signed together, as follows: "The rental agreement (long form lease) was prepared by Morris Liebermensch and is all in his handwriting, except for the handwritten words "to check" on page 2. Patel signed this agreement on or about August 2, 2003. [The option contract dated July 25, 2003, the fax from Morris Liebermensch to Sam], was also prepared by Liebermensch, except for the handwritten portions that were prepared by Patel. Patel signed the fax and Morris Liebermensch initialed the handwritten portion at the same time, on August 2, 2003." Thus, each party signed one copy of the rental agreement to give to the other.
 According to Patel, when the parties signed the lease and he signed the option contract, this procedure sufficiently complied with the language of the documents, even though no faxes were sent as anticipated by the option contract, in order to create an enforceable option. (However, as will be discussed, Liebermensch contends the method of acceptance stated in the option contract had to be utilized.)
 After paying rent for about a year, Patel sent a letter dated July 22, 2004, and a notice of exercise of the option to purchase the property, "on the terms *Page 380 
and conditions therein set forth and as stated below" (purchase price of $298,700). Liebermensch responded by preparing a draft real estate purchase agreement, specifying the following terms. This sale would be "as is," the buyer would make a 10 percent deposit of the purchase price with a certain escrow company, and an escrow period of 90-to-120-day s was specified, if necessary, in order for Liebermensch to accomplish a tax exchange transaction (26 U.S.C. § 1031).
 In response, Patel sent his own draft real estate purchase agreement that changed some of those terms as follows. After the "as is" provision, he added, "As well Buyers have option to cancel this offer if not fully satisfied." In place of the 90-120 day escrow period, Patel added this paragraph: "If seller will require more than 30 days to close escrow for 1031 exchange. Then buyers will require to deposit only [$5,000] and seller will be responsible for all escrow and other expenses after 30 days of opening escrow. Seller will have maximum of 120 days to close the escrow."
 Liebermensch did not accept Patel's draft real estate purchase agreement. Later, Patel signed a copy of the Liebermensch version, but the negotiations stopped.
 Patel filed his complaint November 24, 2004, and in response to a demurrer by Liebermensch, Patel amended it as above to state that the option contract was signed at the same time as the rental agreement, in August 2003. The demurrer was overruled, with the trial court concluding, "especially in light of the First Amendment to the Complaint — that the complaint adequately states a cause of action for breach of contract and specific performance. Moreover, the Court believes that whether there were material modifications to the option agreement or whether the option agreement is too indefinite cannot be determined at the pleading stage."
 Liebermensch also filed the unlawful detainer action, which was consolidated with this action. A case management conference was set and the matters were scheduled for jury trial. Patel was no longer pursuing any breach of contract damages, but only specific performance.
 B Trial, Special Verdict and Judgment At trial, testimony was taken from both Patel and Liebermensch, and their spouses, about the course of dealings between the parties, and documentary evidence was submitted. Patel testified that he intended to get a loan from a mortgage company to pay the purchase price, and was told that the loan *Page 381 
commitment would only be good for 30 to 45 days, and that is why he sought to shorten the proposed escrow period. Liebermensch testified that they never discussed any terms of sale, such as proposed escrow periods or tax exchange proposals. He continued to dispute that Patel had signed the option contract at the same time as the rental agreement, in August 2003, and argued he did not want to deal with someone he did not trust.
 After instruction, the matter was submitted to the jury to determine the factual issues specified by the special verdict form, i.e., whether the parties had entered into an option contract giving Patel the right to purchase the property from Liebermensch (jury vote was 11-to-1 yes). Also, the special verdict form required the jury to determine whether the terms of the option contract were sufficiently clear to enable the parties to carry out the objective of the contract (jury vote was 10-2 yes).
 After the jury returned its special verdicts, the judgment was issued as follows: The court declared that, sitting in equity, it had determined that the option contract (1) was supported by adequate consideration and was fair and reasonable to the parties when entered into; (2) Patel had validly exercised the option contract on July 22, 2004, and was, at all material times, ready, willing and able to perform it by purchasing the property under the option contract; and (3) specific performance of the option contract should be ordered for the stated price of "$298,700, net to defendants, in cash for the Property," to be implemented as follows: "b. Defendants shall execute and deliver to plaintiff a grant deed in form and substance identical to the grant deed attached as Exhibit 2 transferring to plaintiff marketable title to the property free and clear of all liens or encumbrances, except real property taxes and easements and restrictions of record; [¶] c. The obligations described in paragraphs 1.a. and 1.b. are concurrent conditions that shall be performed by the parties not later than that date 60 days from the date notice of entry of judgment is mailed to defendants; [¶] d. [or by appointed elisor if necessary]."
 The trial court further ordered that Liebermensch would take nothing from defendant Patel on the consolidated complaint for unlawful detainer. Rulings were made on costs of suit and fees.
 Pending appeal, the parties stipulated to and the trial court accordingly ordered a stay of specific performance of the option contract. *Page 382 
 DISCUSSION I INTRODUCTION; PROCEDURE AT TRIAL On appeal, Liebermensch challenges both the ruling on demurrer and the judgment for specific performance of the option contract. In analyzing the ruling on demurrer, we take as true the allegations in the complaint. (Blank v. Kirwan (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718,703 P.2d 58].) We liberally construe those allegations, reading them as a whole, all the parts in their context, to determine whether sufficient facts are stated to constitute a cause of action. (Ibid.; Grinzi v. SanDiego Hospice Corp. (2004) 120 Cal.App.4th 72, 78 [14 Cal.Rptr.3d 893].) We do not assume the truth of "contentions, deductions or conclusions of law." (Aubry v. Tri-City Hospital Dist.
(1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) If applicable, the trial court will exercise its discretion in deciding whether to grant leave to amend. (Ibid.)
 With respect to the legal correctness of the judgment entered after the special verdict, the following basic approach is required on review. Under Code of Civil Procedure section 624, a special verdict is defined as one in which "the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law." A special verdict will be upheld if it is consistent with the law and the evidence. (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 375, pp. 427-428.)
 Here, the language of the special verdict tracked that of Judicial Council of California Civil Jury Instructions (2006) CACI No. 302, which states the instructions for determining whether a contract was created. The jury was required to determine from the evidence, including the testimony of the parties, whether "the contract terms were clear enough that the parties could understand what each was required to do"; whether they provided consideration; and whether they "agreed to the terms of the contract." The jury was further instructed that Patel had the burden of proof, and it was told, "When you examine whether the parties agreed to the terms of the contract, ask yourself if, under the circumstances, a reasonable person would conclude, from the words and conduct of each party, that there was an agreement. You may not consider the parties' hidden intentions." (See CACI No. 302.)
 The jury was next instructed about the essential terms of a real property purchase contract, as including identification of the buyer and seller, a *Page 383 
description of the property, the purchase price, and "the time and manner of payment of the purchase price."
 Because the jury was presented with factual issues, a substantial evidence standard of review applies. We are mindful that to evaluate the legal sufficiency of the evidence, a court will first "resolve all explicit conflicts in the evidence in favor of the respondent and presume in favor of the judgment all reasonable inferences. [Citation.] Second, one must determine whether the evidence thus marshaled is substantial." (Kuhn v. Department of General Services (1994) 22 Cal.App.4th 1627,1632-1633 [29 Cal.Rptr.2d 191], fn. omitted.) "Substantial" evidence means the evidence must be "`of ponderable legal significance. Obviously the word cannot be deemed synonymous with "any" evidence. It must be reasonable . . ., credible, and of solid value. . . .' [Citation.]" (22 Cal.App.4th at p. 1633.) The trial court anticipated that the jury's special verdict findings would then be implemented through its own legal conclusions following those facts. Before we evaluate the record and its legal and factual support for the judgment, we next outline the applicable contractual interpretation principles.
 II CONTRACT INTERPRETATION A specific performance request is one of several common types of contract actions heard in equity, normally at court trial. (Schaefer v.United Bank Trust Co. (1930) 104 Cal.App. 635, 642 [286 P. 723], cited in 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 120, p. 186.) In the main action, the trial court had before it Patel's request for specific performance of the option contract, not any request for damages for breach of contract. "As a general rule, in an action for specific performance, in which a court must instruct a party to perform certain acts, the provisions of a contract must be more specific than what is required in an action for damages, in which the court is merely awarding monetary relief. [Fn. omitted.]" (1 Miller Starr, Cal. Real Estate (3d ed. 2000) § 1:20, p. 60, citing, e.g., Larwin-Southern California, Inc.v. JGB Investment Co. (1979) 101 Cal.App.3d 626, 636 [162 Cal.Rptr. 52].) Under section 3390, "The following obligations cannot be specifically enforced: [¶] . . . [¶] 5. An agreement, the terms of which are not sufficiently certain to make the precise act which is to be done clearly ascertainable."
 "[W]here a party seeks specific performance of a contract for the sale of real property, the terms of the contract must be complete and certain in all particulars essential to its enforcement and must express each material term in a reasonably definite manner [citations]. Although usage or custom may be *Page 384 
used to explain the meaning of language or to imply terms [citations], no material element must be left to future agreement [citation]." (Krasleyv. Superior Court (1980) 101 Cal.App.3d 425, 431 [161 Cal.Rptr. 629] (Krasley).)
 King v. Stanley (1948) 32 Cal.2d 584, 588-589 [197 P.2d 321] (King), stands for the proposition that some missing terms and conditions of a proposed real property purchase agreement may be supplied by reading it in light of "[t]he usual and reasonable conditions of such a contract," such as the normal escrow, title insurance, taxes and other sales details. If all of the essential factors can be determined from the contract (the seller, the buyer, the price to be paid, the time and manner of payment, and the property to be transferred), then other terms can be implied or supplied.
 Moreover, in addition to considering the surrounding circumstances of the contract dealings (§ 1647), the courts in interpreting contracts will apply the rule that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together" (§ 1642; see Harm v. Frasher
(1960) 181 Cal.App.2d 405 [5 Cal.Rptr. 367]).
 In general, "construction of the instrument is a question of law, and the appellate court will independently construe the writing. [Citation.]" (Winet v. Price (1992) 4 Cal.App.4th 1159, 1166 [6 Cal.Rptr.2d 554].) An appellate court will not be bound by the trial court's interpretation, instead independently construing the writing. (Ibid.) "Our objective in construction of the language used in the contract is to determine and to effectuate the intention of the parties. [Citation.] It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce." (Ibid.)
 Using this basic approach, we first decide that the trial court had a sufficient basis to overrule the demurrer, because the facts as pled, and assumed to be true, adequately presented a claim for specific performance of the option contract. Patel alleged the terms of the contract in a reasonably definite manner for purposes of pleading a right to this type of relief. (Krasley, supra, 101 Cal.App.3d 425, 431.) The trial court correctly took the view that it could not be resolved on the pleadings or facts known before trial whether the option contract had been modified or was too indefinite to be enforced. In any case, this demurrer ruling was subsumed in the judgment and under all the circumstances, we think our review should properly focus upon the judgment after trial, and not the preliminary pleading issues. *Page 385 
 III OPTION CONTRACT CHARACTERISTICS; SPECIAL VERDICT An option contract is a unilateral contract, creating limited rights in the optionee, usually the right to purchase property under stated terms and within a prescribed period of time. (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 174, p. 210.) If the option is exercised on the stated terms and within the fixed time, then a bilateral contract arises. (Ibid.) An option agreement does not require the optionee to perform any act, but the optionor is bound to perform upon the election of the optionee. (1 Miller Starr, Cal. Real Estate, supra, § 2.7, pp. 19-20.)
 In Palo Alto Town Country Village, Inc. v. BBTC Company (1974)11 Cal.3d 494 [113 Cal.Rptr. 705, 521 P.2d 1097], the court discussed "the dual aspect of an option," which may be described "as an irrevocable offer which is completed by the acceptance of the optionee," or alternatively "as a binding contractual promise to perform the underlying contract subject to the condition precedent of acceptance by the optionee." (Id. at pp. 502-503.) "Which aspect of an option is emphasized depends upon which party's duties are under consideration. From the point of view of the optionor's duty it is binding upon the making of the option contract. `[T]he optionor has irrevocably promised upon the exercise of the option to perform the contract or make the conveyance upon the terms specified in his binding offer. . . . The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. "The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance." [Citation.]' [Citations.]" (Ibid.)
 To be enforceable, an option contract must contain all the material contract terms that would be contained in the ultimate contract of sale. (1 Miller Starr, Cal. Real Estate, supra, § 2.7, pp. 20-21.) These essential contract terms include (1) the parties, (2) the term of the option, (3) the identity of the property, and (4) the price and method of payment. (Ibid.) These commentators make further observations on drafting a successful option contract: "In addition, any other terms that are intended to be included within the bilateral purchase contract on the exercise of the option, such as terms of subordination, release, prepayment privileges, etc., must be included within the terms of the option. If all of the ultimate terms of purchase are not specified, and there are terms that are left for future negotiation or agreement, the option is not enforceable because there would not be a complete and unambiguous contract between the parties at the time it is exercised. The *Page 386 
option must specify all of the terms of purchase and sale in a complete, clear, and concise manner so that the optionee need only state, `I exercise my option,' in order for a binding and enforceable contract of sale to be created. Anything less than this will jeopardize the optionee's rights of enforcement." (Ibid., fn. omitted.)
 In the comparable statute of frauds context, it is well accepted that an agreement for the sale of real property must be shown by a writing that is subscribed by the party to be charged, and that contains all essential elements of the agreement. (House of Prayer v. EvangelicalAssn. for India (2003) 113 Cal.App.4th 48, 53 [7 Cal.Rptr.3d 24] (House of Prayer).) "What is essential depends on the circumstances of the agreement, including the agreement and its context, the subsequent conduct of the parties, and the remedy sought. [Citation.]" (Ibid.) In that case, the court observed that a written agreement that is otherwise sufficient will not normally be set aside for omitting the time of payment, because "[p]ursuant to Civil Code section 1657, courts of this state have consistently held a contract for the sale of real estate is not unenforceable for failure to specify a time of performance, because the law implies a reasonable time. [Citations.]" (House of Prayer, supra, at p. 54.) Based on its analysis of the agreement and its context, the court in that case found it was proper to imply a reasonable time for performance, so the agreement was deemed enforceable. (Ibid., distinguishing King, supra, 32 Cal.2d 584.)
 Likewise, in Sterling v. Taylor (2007) 40 Cal.4th 757, 772 [55 Cal.Rptr.3d 116, 152 P.3d 420] (Sterling), the Supreme Court was considering statute of frauds issues, by determining as a question of law whether a particular writing for the sale of real property, considered in light of the circumstances surrounding its making, was enforceable. In connection with noting that such a sale contract must identify the buyer, the seller, the price, and the property, the court relied on Houseof Prayer, supra, 113 Cal.App.4th 48, 53-54, as suggesting that the other traditional essential terms of a real estate purchase contract (the time and manner of payment; see King, supra, 32 Cal.2d 584), were not really essential under the statute of frauds analysis "because contracts for the sale of real property are enforceable without specification of a time of performance, that term is not essential under the statute of frauds"; see House of Prayer, supra, at pp. 53-54). (Quoting Sterling,supra, 40 Cal.4th 757, 772, fn. 14.) However, in Sterling, the Supreme Court did not have before it any disputes about the time and manner of payment, so we do not regard that case authority as decisively rejecting "time and manner" as essential elements of such a real estate purchase contract.
 Also in Sterling, supra, 40 Cal.4th 757, the Supreme Court relied on the rule of contract interpretation "`that when a contract is ambiguous or *Page 387 
uncertain the practical construction placed upon it by the parties before any controversy arises as to its I hearing affords one of the most reliable means of determining the intent of the parties.' [Citation.]" (Id. at pp. 772-773.) The rules of contract interpretation, including the statute of frauds, are directed toward enforcing "the parties' mutual understanding of the essential terms of their agreement, when viewed in light of the transaction at issue and the dispute before the court. The writing requirement is intended to permit the enforcement of agreements actually reached, but `to prevent enforcement through fraud or perjury of contracts never in fact made.' [Citation.] The sufficiency of a memorandum to fulfill this purpose may depend on the quality of the extrinsic evidence offered to explain its terms." (Id. at p. 775.)
 In Blackburn v. Charnley (2004) 117 Cal.App.4th 758, 766 [11 Cal.Rptr.3d 885], the court restated the "material factors" supporting a contract for the sale of real property, and included, pursuant to King, supra, 32 Cal.2d 584, 589, the time and manner of payment. The court further stated, "In determining whether the material factors in a contract are sufficiently certain for specific performance, `the modern trend of the law favors carrying out the parties' intention through the enforcement of contracts and disfavors holding them unenforceable because of uncertainty. . . . The defense of uncertainty has validity only when the uncertainty or incompleteness of the contractprevents the court from knowing what to enforce.' [Citation.]" (Blackburn, supra, at p. 766, italics added.)
 In the case before us, the option contract was drafted by laypersons and the transactions occurred in several stages. "Whether any particular document is in fact an `option' or an `agreement of sale' depends on the nature and terms of the document and the obligation of the parties, regardless of how the parties may label or identify the document. The test is whether or not there is a mutuality of obligation. If both parties are obligated to perform, it is an agreement of sale; if only one party (the optionor-offeror) is obligated to perform, it is merely an option. [¶] It is often difficult to determine whether the parties intended to create an option or a bilateral contract. When the contract is drawn by a layperson, the parties may intend to create an option but the document may be drafted in artfully by the parties or their broker such that, in fact, they create a bilateral purchase agreement." (1 Miller Starr, Cal. Real Estate, supra, § 2.8, pp. 26-27, fns. omitted.)
 We must take into account these negotiations of several disputed issues at several stages of the transaction, first in July and August of 2003 when the option contract and rental agreement were drawn up and signed, and again in July of 2004 when Patel gave notice that he wanted to exercise the option, and Liebermensch responded with a draft purchase agreement. To interpret this course of dealings, we cannot ignore the special nature of the option *Page 388 
contract, as opposed to the subject purchase contract. Specifically, Patel, as the holder of the option, was not bound to perform or enter into the bilateral purchase agreement, on the terms specified in the option. (See 1 Miller Starr, Cal. Real Estate, supra, § 2:9, pp. 31-32.) However, Liebermensch would be bound to perform the option contract if it, as an offer, had been appropriately accepted by Patel, but only if it contained all the essential terms of a real estate purchase contract. (Palo Alto Town Country Village, Inc. v. BBTCCompany, supra, 11 Cal.3d 494, 503.)
 "Whether an omitted or uncertain provision is essential to an enforceable contract is a question of fact. The question is whether the essential terms are clear enough that the court can fairly and equitably determine the intentions of the parties and enforce the contract in a reasonable manner to give effect to their intentions. If the uncertainty relates to a matter that is so important to the contract that the court cannot determine what the parties intended, and the enforcement of the contract as written will be unfair, the court will refuse to enforce the uncertain agreement." (1 Miller Starr, Cal. Real Estate, supra, § 1:20, pp. 62-63, fn. omitted.) "On the other hand, if the omitted matter, when measured by this test, is not essential, each party will be forced to accept a reasonable determination of the unsettled provision or, if possible, the unsettled provision may be left unperformed and the remainder of the contract enforced." (Id. at p. 63.) It is not enough for the party seeking to enforce the contract to generally assert that trade custom and usage will fill the gaps, if there was a material element that was left to future agreement. (Krasley, supra, 101 Cal.App.3d 425, 431.)
 On appeal, the parties do not dispute that the option contract sufficiently identifies the contracting parties, the description of the property, and the price of $298,700 until the end of 2004. However, the remaining terms of the purchase contract always remained disputed, generally regarding the time and manner of payment. At trial, the testimony identified specific problems, such as the "as is" nature of the property, the reduction or refundability of the deposit, the length of time of the escrow, and payment of escrow expenses if there were a delay. The apparent purpose of sending the factual disputes to the jury was to resolve the conflicts in the evidence about whether Patel had signed the option contract when the lease was signed or after the litigation began. To reiterate this jury's findings, they addressed the fundamental issues of (1) whether the parties had entered into an option contract giving Patel the right to purchase the property from Liebermensch (yes), and (2) whether the terms of the option contract were sufficiently clear to enable the parties to carry out the objective of the contract (yes).
 Liebermensch challenges those findings for lack of sufficient evidentiary support. He first argues that the jury should not have found that an appropriate method of acceptance of the option contract offer was followed when *Page 389 
Patel signed the option contract at the time of signing of the lease, but did not do so by faxing it as specified in the option contract. The jury heard testimony from both Patel and Liebermensch about the circumstances of the lease signing, and the jury evidently accepted Patel's position that Liebermensch agreed to this method of exercise of the option.
 Nevertheless, we agree with Liebermensch that these special verdict findings as a whole are not supported by sufficient evidence, because the form or method of the option exercise was not a key issue for purposes of analyzing enforceability of the option contract, in light of the way the evidence was developed about the overall transaction terms. The jury could not properly determine as a factual matter from all this evidence that the terms of the option contract were "sufficiently clear" to enable the parties to carry out the objective of the contract. Rather, even though the parties attempted to enter into the option contract in August 2003, the record further shows their extensive remaining, but unsuccessful, attempts to reach a completed agreement, which we must next take into account in determining whether the agreement actually represented a meeting of the minds as to all essential terms of the purchase contract, or whether the court could fill in any missing terms.
 IV INSUFFICIENT SPECIFICITY OF CONTRACT TERMS Case law recognizes that in determining what are the "essential" elements of a particular agreement, a court must look to all the circumstances of the agreement, including the context of the overall transaction, the nature of the dispute presented, the subsequent conduct of the parties, and the remedy sought. (House of Prayer, supra,113 Cal.App.4th at p. 53; Sterling, supra, 40 Cal.4th at p. 775.) Liebermensch relies on various terms as disputed and thereby preventing the formation of a binding option or purchase agreement. His draft agreement stated that the buyer would make a 10 percent deposit of the purchase price with a specified escrow company, and an escrow period of 90 to 120 days would be allowed if necessary in order for Liebermensch to accomplish a tax exchange transaction (26 U.S.C. § 1031).
 In place of this proposed 90-to-120-day escrow period, Patel added this paragraph: "If seller will require more than 30 days to close escrow for 1031 exchange. Then buyers will require to deposit only [$5,000] and seller will be responsible for all escrow and other expenses after 30 days of opening escrow. Seller will have maximum of 120 days to close the escrow." (In his respondent's brief, Patel argues the $1,200 deposit made for the rental *Page 390 
agreement, to be refunded upon purchase, could reasonably be converted into the deposit for the purchase agreement.) It was not disputed at trial that the parties never reached agreement on any reduction or refundability of the deposit, the length of time of the escrow, or payment of escrow expenses if there were a delay.
 On appeal, the parties also discuss whether the property sale would be "as is," since Patel added to his version, "As well Buyers have option to cancel this offer if not fully satisfied." (See 12 Witkin, Summary of Cal. Law, supra, Real Property, § 471, p. 549 ["Several California statutes require disclosures in connection with the sale of real property, including the following: [¶] . . . [¶] (2) [Section] 1102 et seq. . . . [citation] (transferor's and broker's duties to disclose). . . . [¶] (3) [Section] 1099 (disclosure of structural pest control inspection report), [¶] (4) [Section] 1134 . . . [citation] (disclosure required on transfer of condominium)"].) However, we need not focus on that particular aspect of the negotiations, because our inquiry should be whether the essential terms of the time and manner of payment were resolved by agreement, as of the time of the entry into the option contract. An enforceable option contract specifies all essential terms of purchase and sale, such that upon the exercise of the option, a binding and enforceable contract of sale is created. (1 Miller Starr, Cal. Real Estate, supra, § 2.7, pp. 20-21.) The specificity of terms requirement is particularly important when specific performance is sought. (§ 3390, subd. 5.)
 Accordingly, the issue boils down to whether the admittedly lacking terms could be added by the trial court, by implication, as reasonable (a cash sale and an escrow period of 60 days, with defendants to transfer title clear of all liens or encumbrances except real property taxes or recorded restrictions). Several portions of the record lead us to conclude the trial court erred in so doing. First, it was not disputed that the condominium unit was investment property for Liebermensch, and that the sale of it could have an adverse tax consequence for him. Although it might be "reasonable" in some circumstances to imply a 60-day escrow period if no such tax consequences were anticipated, to do so here would conceivably add a significant economic effect to the transaction that the parties never anticipated. This record does not support a conclusion that time and manner of payment were only standard terms that could have been implied into the contract, because the parties continually expressed their own economic conditions to each other and did not concede or compromise on them. It is not necessary to rely on the subjective intentions of the parties to reach this conclusion, because the transaction objectively evaluated as a whole shows that all the terms that were material to this particular seller and buyer were never agreed upon.
 Instead of discussing any options for the time and manner of payment, the parties focused only upon the price and the method of exercise of the option. *Page 391 
Patel testified that he assumed a normal time would be provided to process his loan commitment, and no 26 United States Code section 1031
property exchange was ever discussed. Patel also disputed whether the smaller rental security deposit should also serve as an adequate escrow deposit, and whether more costs should be assessed to the seller if a longer escrow period were required.
 Liebermensch testified that he thought they would share escrow expenses, in the normal course, and he believed it was a reasonable request to allow him extra time to make such a property exchange. However, in the context of a layperson selling investment property, to another layperson/homebuyer, the innate "reasonableness" of the time and manner of payment will not always be without dispute, as this record demonstrates. The evidence provided by both parties shows that each of them viewed these particular terms as essential and material to the viability of the deal, and their conduct showed that more than the purchase price and the identity of the property were essential terms.
 Even if the evidence showed the parties had reached a potential "agreement to agree," which they did not, it would only have included the terms customary in the industry for time and manner of payment, but that is not this case. Rather, there were unique features about this transaction and unanticipated economic consequences to both sides, and the trial court did not have an adequate basis to conclude that a binding purchase contract had previously been reached on all material terms, such that only a statement that the option was being exercised was enough to create a bilateral contract. This was not an appropriate case to imply new terms to create an enforceable contract for the sale of real property, because "`the uncertainty or incompleteness of the contract prevents the court from knowing what to enforce.' [Citation.]" (Blackburnv. Charnley, supra, 117 Cal.App.4th 758, 766.) Since the conditions of sale with respect to the terms and manner of payment always remained in dispute, the trial court could not appropriately impose terms to which the parties never agreed, as implied terms, when those portions of the dispute were in fact "deal-breakers."
 Finally, since Patel's request for specific performance was consolidated with the Liebermensch unlawful detainer action, the trial court erred in dismissing the unlawful detainer matter. Our reversal of the judgment will be made with directions to the trial court to hold appropriate further proceedings on the unlawful detainer matter, in conjunction with entering judgment for Liebermensch on the action for specific performance of this option contract. *Page 392 
 DISPOSITION The judgment is reversed and remanded, and the trial court is directed to hold appropriate further proceedings on the unlawful detainer matter, in conjunction with entering judgment for Liebermensch on the action for specific performance of this option contract. The parties shall bear their own costs on appeal.
 McConnell, P. J., concurred.